Robert P. WORRALL, Guardian
for and on behalf of Helen
Worrall, Plaintiff,

v.

James E. IRWIN, Defendant, Counter–
Claimant, Third–Party Plaintiff,

v.

Robert P. WORRALL, Counter-defendant,

and

First National Bank of Ohio, et
al., Third–Party Defendants.

No. C–1–93–017.*

United States District Court,
S.D. Ohio,
Western Division.

July 1, 1994.

* Citations to documents docketed in the case file have been omitted.

Robert D. Anderson, Moyes & Anderson, Leesburg, VA, for Robert P. Worrall.

James H. Coogan, Drew, Ward & Graf Co. LPA, Cincinnati, OH, for James E. Irwin.

Russell S. Sayre, Taft, Stettinius & Hollister, Cincinnati, OH, for Robert E. Rich, Daniel J. Hoffheimer, Jennifer B. Olano, Gregory C. Luke.

James H. Coogan, Drew, Ward & Graf Co LPA, Cincinnati, OH, for James E. Irwin.

Beth Ann Myers, Frost & Jacobs, Cincinnati, OH, for First Nat. Bank of Ohio, Dennis G. Walsh.

Frank Joseph Schiavone, III, F. Joseph Schiavone Co., Hamilton, OH, for H. Vincent Walsh.

Felix John Gora, Rendigs Fry Kiely & Dennis, Fern T. Schmitz, Cincinnati, OH, Robert D. Anderson, Moyes & Anderson, Leesburg, VA, Michael Edward Maundrell, Schroeder Maundrell Barbiere & Powers, Cincinnati, OH, for Dennis L. Wittman.

Brenda V. Thompson, Graydon, Head & Ritchey, Barbara Bison Jacobson, Bison Jacobson Law Office, Cincinnati, OH, for Gregory Scott Beane.

John Allan Smalley, Young & Alexander Co., LPA, Dayton, OH, Patricia Jane Koprucki, Stewart Jaffy & Associates, Columbus, OH, for Barbara K. Eshbaugh.

Barbara K. Eshbaugh, Oxford, OH, pro se.

Stephen Sloan Eberly, Vorys, Sater, Seymour & Pease, Timothy Alan Tepe, Dinsmore & Shohl, Cincinnati, OH, for IDS Financial Services Inc.

## *ORDER*

HERMAN J. WEBER, District Judge.

Plaintiff Robert Worrall as Guardian for and on behalf of Helen Worrall (Guardian), a resident of either the State of Ohio or the Commonwealth of Virginia, originally filed the instant action in the General Division of the Butler County, Ohio Court of Common Pleas seeking judicial relief against defendant James Irwin, a resident of Wayne County, Indiana, due to Irwin's alleged conversion of Ms. Worrall's assets by acts of fraud, coercion, duress, and undue influence. Guardian seeks compensatory damages and expenses in excess of $50,000.00 allegedly suffered by Ms. Worrall's estate in defending against Irwin's "frivolous petitions."

On January 7, 1993, Irwin petitioned to remove the action from the General Division of the Common Pleas Court on the basis of this Court's diversity jurisdiction, subsequently filed an Answer, a counterclaim against Guardian and Robert P. Worrall as an individual, and seven third-party claims against various individuals and entities as well as Worrall as an individual. Irwin raises numerous claims under 42 U.S.C. § 1983 and Ohio common law. *Infra,* § II.

On April 2, 1993, the Court denied third-party defendant Gregory Scott Beane's motion to remand and granted the removal petition finding jurisdiction pursuant to 28 U.S.C. § 1332(a).

This matter is before the Court upon plaintiff's second motion for summary judgment, Irwin's memorandum in opposition, third-party defendants' motions for summary judgment, Irwin's memoranda in opposition, and third-party defendants' replies.

On June 6, 1994, this Court ordered the parties to show cause why plaintiff's complaint should not be dismissed. The Court has provided the parties with ample opportunity to respond.[1] On June 27, 1994, the

---

1. Sua sponte consideration of summary judgment is warranted in order to promote the central objectives of summary judgment: "a just, speedy and inexpensive determination of every action." *Celotex v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

Court heard oral arguments on all pending motions.

## I.

This controversy is essentially a dispute over whether the inter vivos gifts to Irwin by Helen Worrall were void, voidable, or valid, and the damages Guardian and Irwin have suffered as a result of the controversy.

Guardian, Helen Worrall's brother and guardian of her person within the Commonwealth of Virginia, alleges that Ms. Worrall suffers from Alzheimer's disease and has consequently been unable to operate her financial affairs since at least as early as February 1990. Guardian claims that Irwin defrauded Ms. Worrall out of her assets.

Ms. Worrall met Irwin in 1989 or 1990 when she visited an automobile dealership where Irwin worked as a salesman. Ms. Worrall was approximately seventy-six years old at that time; she was unmarried and retired from a teaching position at Miami University in Oxford, Ohio.

Guardian alleges that through fraud, coercion, and undue influence, Irwin caused Ms. Worrall to make certain gifts to Irwin, including all of her stocks and bonds, and caused her to execute a will naming Irwin as executor leaving Irwin all of her assets. Ms. Worrall executed the will on June 14, 1991.

Irwin claims that Ms. Worrall does not suffer from any mental or emotional deficiencies and that she executed the will and gave her stocks and bonds to him because they are friends and because she did not want her brother or any nursing home to get any of her assets.

On August 14, 1991, Ms. Worrall signed an agency agreement placing control of her assets in trust with First National Bank of Southwestern Ohio. A genuine dispute exists over the facts surrounding Ms. Worrall's decision to sign the agency agreement. Certainly Mr. Worrall and the bank thought she was competent at the time they entered into the agreement. Irwin alleges that Ms. Worrall telephoned him from her home in Oxford, Ohio and complained that Worrall "had rifled all of her possessions and had taken a copy of her Last Will and Testament." She asked Irwin to come to her home because Mr. Worrall and an attorney from First National Bank of Southwestern Ohio (First National Bank) were on their way to her home to obtain her signatures on some documents. Irwin alleges that during the meeting at Ms. Worrall's home, Dennis Walsh, a First National Bank attorney, attempted to intimidate Ms. Worrall into signing the agency agreement, but Ms. Worrall refused to sign.

The next day, according to Irwin, Ms. Worrall signed the agency agreement thinking that she was signing a health insurance form. Irwin alleges that Guardian misrepresented the agency agreement as an insurance form while covering the major portion of the document with his hand to prevent Ms. Worrall from realizing it was in fact the agency agreement. Mr. Worrall denies these allegations.

Approximately one week later, on September 6, 1991, Ms. Worrall signed a revocation of her agency agreement and provided Irwin with power of attorney over her financial affairs. Two days earlier Ms. Worrall had sent written instructions to IDS Financial Services, Inc. to transfer her securities to Irwin.

On September 17, 1991, Mr. Worrall and First National Bank applied for a guardianship of Ms. Worrall in the Butler County Court of Common Pleas, Probate Division (Probate Court). Irwin alleges that on September 27, 1991, the Probate Court granted First National Bank and Wittman's motion to have Wittman appointed as process server. Wittman represented Guardian and First National Bank. On September 27, 1991, the Probate Court issued a temporary restraining order which prevented financial institutions and Irwin "from making any disbursements, transfers, withdrawals, or otherwise

"[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte,* so long as the losing party was on notice that [he] had to come forward with all of [his] evidence." *Id.* at 326, 106 S.Ct. at 2554; see also *Routman v. Automatic Data Processing, Inc.,* 873 F.2d 970, 971 (6th Cir.1989); *Yashon v. Gregory,* 737 F.2d 547, 551–52 (6th Cir.1984), cert. denied after remand, 486 U.S. 1032, 108 S.Ct. 2015, 100 L.Ed.2d 602 (1988).

permitting the transaction of business as to [Ms. Worrall's] accounts or assets ... until further order of the Court."

Irwin alleges that on October 3, 1991, Wittman filed with the Probate Court an affidavit containing misrepresentations including the statement that he had received information concerning the existence of a check issued to James Irwin in the amount of $71,896.38 representing the redemption of certain securities belonging to Ms. Worrall. Irwin asserts that as a result of Wittman's misrepresentations, the Probate Court enlarged the TRO, without hearing or prior notice to Irwin, and enjoined Irwin from negotiating the $71,896.38 check. Irwin did not appeal either Order.

Irwin claims that on October 3, 1991, Ms. Worrall asked him "to get her a 'good attorney'." Irwin contacted attorney H. Vincent Walsh who informed Irwin that he had no connections with First National Bank despite the fact that his brother Dennis G. Walsh was an attorney and trust officer of that bank. Irwin maintains that he accompanied Ms. Worrall to H. Vincent Walsh's office the next morning for a scheduled appointment where they encountered attorney Wittman. Wittman served papers upon them "including an order to Irwin to pay to the Court the sum of $71,896.38, along with a restraining order. This was the first notice to or service on Irwin of any sort in this action. H. Vincent Walsh immediately advised Irwin to turn the $71,896.38 check and another check ... over to the Butler County Probate Court through attorney Wittman or Irwin would 'go to jail.'" Irwin voluntarily deposited the two checks with the Clerk of the Probate Court acquiescing to the Court's jurisdiction.

On October 4, 1991, Ms. Worrall, with the permission of the Court, paid attorney H. Vincent Walsh a retainer of $3,000.00 and allegedly informed him of her desire to make Irwin her guardian. Irwin claims that Ms. Worrall also told Walsh that she wanted to change banks. Walsh allegedly advised her not to change banks.

On October 9, 1991, the Probate Court issued a preliminary injunction which, in effect, continued the injunctive relief resulting from the TRO and which contained more specific injunctive relief. Irwin claims that he never received notice of the hearings on the temporary restraining order or the preliminary injunction. Irwin did not appeal the preliminary injunction.

By October 10, 1991, Ms. Worrall had become dissatisfied with H. Vincent Walsh's supposed inaction regarding a competency hearing scheduled in the Probate Court for October 15, 1991. She allegedly informed Irwin of her concern that H. Vincent Walsh was "'really on the other side' of the case." According to Irwin, he accompanied Ms. Worrall to meet with four attorneys with the law firm of Taft, Stettinius & Hollister in Cincinnati. Irwin asserts that these attorneys separately interviewed Ms. Worrall and that they each concluded she was "capable and competent, and that there was no undue influence on the part of James E. Irwin."

Following a hearing on October 15, 1991, the Probate Court determined that Ms. Worrall had not independently chosen her attorney. The Court removed attorney H. Vincent Walsh and the attorneys from Taft from their representation of Ms. Worrall, and appointed attorney Gregory Beane to represent her. The Probate Court also appointed interim guardians, Barbara Eshbaugh, over Ms. Worrall's person and First National Bank over Ms. Worrall's estate.

Irwin alleges that on October 15, 1991, the Probate Court told Irwin, his wife, and Ms. Eshbaugh that Irwin "had illegally transferred and transported cars or titles, and that [he] had illegally used his Power of Attorney to transfer the assets of Helen V. Worrall to his name." Irwin claims that attorney Wittman had provided this misinformation to the Probate Court.

According to Irwin, "On October 31, 1991, Attorney Dennis G. Walsh ... called James E. Irwin and told Irwin he would put Irwin in jail if Irwin saw Helen V. Worrall again."

On November 1, 1991, the Probate Court issued a restraining order preventing Irwin from "molesting, striking, harassing, beating or interfering with [Ms. Worrall] and further from selling, disposing, transferring, assigning, secreting, or encumbering any property of whatever description now in his possession

or under his control." Irwin did not appeal this Order.

The Probate Court held a competency hearing on November 21, 1991. Irwin claims that none of the parties received notice of the hearing. Several days later the Probate Court issued an Order finding Ms. Worrall incompetent. This finding was based upon findings by the University of Cincinnati Geriatric Evaluation Center where Barbara Eshbaugh had taken Ms. Worrall for evaluation. The evaluation was based, in part, upon Barbara Eshbaugh's alleged statement that Irwin had financially exploited Ms. Worrall. Irwin alleges, "there has never been one scintilla of evidence of any such 'financial exploitation.'"

The Probate Court also ordered two stock accounts transferred from Irwin to the Guardianship Estate. These accounts were with the IDS Financial Corporation of Minneapolis, Minnesota.

Irwin alleges:

At the November 21, 1991 hearing, Gregory Scott Beane offered no evidence or argument that his client Helen V. Worrall, was competent. He did, in collaboration with Dennis L. Wittman, H. Vincent Walsh, and Dennis G. Walsh, proffer hearsay testimony that Miss Worrall was allegedly 'shocked' that Mr. Irwin had any of her assets, and that she wanted them back.

On November 25, 1991, Irwin, through counsel, filed a motion in the Probate Court to be made a party in the Worrall guardianship action. The Probate Court granted the motion. Irwin then filed a motion to clarify and vacate the restraining order, which apparently is still pending. Irwin emphasizes, "[he] is still prohibited from contacting Miss Worrall and technically prohibited from using his assets."

On November 26, 1991, Irwin noticed the deposition of Ms. Worrall, through her guardian Barbara Eshbaugh, to be held on December 19, 1991. Ms. Worrall did not attend the deposition. In December 1991 Ms. Worrall was moved from Ohio to Virginia. Irwin alleges that he has been denied access to Ms. Worrall by telephone or in person since that time.

On January 31, 1992, Dennis Walsh filed the guardian's inventory which, according to Irwin, contains the two checks he had turned over to the Probate Court. Irwin alleges, "the checks have been illegally and ineffectively endorsed and processed and misapplied to the guardianship account." The inventory also allegedly included funds from the securities Ms. Worrall gave to Irwin.

On September 23, 1993, the Probate Court rejected Irwin's exceptions to the inventory of Ms. Worrall's estate and granted summary judgment in favor of the guardian and against Irwin "on the issue of the alleged gift from Helen Worrall to [Irwin]." This judgment was reversed by the Ohio Court of Appeals, Twelfth Appellate District, on April 1, 1994, and the matter was remanded for jury trial. See In re Guardianship of Worrall, CA 93–10–201, 1994 WL 123772, 1994 Ohio App. LEXIS 1515 (12th App. Dist. April 11, 1994) (per curiam).

The Probate Court ordered the guardian to submit a final account to the Court and to prepare "an appropriate order for transfer of the estate ... to Virginia pursuant to the Joint Petition for Transfer of the Guardianship previously filed ...". Id.

On December 10, 1992, Guardian filed the instant action in the General Division of the Butler County Common Pleas Court alleging that Irwin committed fraud and conversion on Ms. Worrall's estate. On January 7, 1993, Irwin removed the case to this Court. Guardian seeks compensatory damages suffered by the estate in recovering the assets of Ms. Worrall and in addressing the allegedly frivolous issues raised by Irwin in the Probate Court.

Upon removal of the case to this Court, Irwin raised the federal and state claims presently pending on motions for summary judgment.

## II.

Mr. Worrall claims as follows:

[T]he action of Irwin in converting the estate of [Ms. Worrall] was without consideration and constitutes fraud on the person and the estate of [Ms. Worrall], constitutes an unlawful conversion of assets, is the

result of coercion, duress, and undue influence upon [Ms. Worrall] by Irwin creating a situation whereby the will and the mind of [Ms. Worrall] was overpowered, subdued and controlled by Irwin.

\* \* \* \* \* \*

Irwin continues to file and pursue exceptions to the estate of [Ms. Worrall] in Ohio despite the knowledge that such action is without merit, continues to file frivolous petitions without merit with the court . . . and continues to harass individuals involved in providing care to [Ms. Worrall].

Mr. Worrall seeks compensatory damages and expenses allegedly suffered by Ms. Worrall's estate in recovering Ms. Worrall's assets "and in addressing frivolous and baseless issues, exceptions and petitions filed by Irwin the intent of which is to harass the guardian and prevent the transfer of the guardianship or [Ms. Worrall] to . . . Virginia . . .".

Irwin's counterclaim and third-party claims fall generally into two categories: conspiracy to violate his constitutional rights in violation of 42 U.S.C. § 1983 and Ohio common law conversion.

Irwin claims the following:

### Counterclaim

Mr. Worrall converted Irwin's property valued at approximately $262,000.00;

### Third Party Claims

1. First National Bank, Dennis G. Walsh, H. Vincent Walsh, Dennis L. Wittman, and Gregory Scott Beane, in their capacities as officers of the Butler County Probate Court, converted Irwin's property valued at approximately $262,000.00;

2. Mr. Worrall and all the third party defendants deprived Irwin of his property ($262,000.00) without due process of law in violation of § 1983;

3. Dennis G. Walsh, H. Vincent Walsh, Dennis L. Wittman in their capacities as officers of the Court, and Mr. Worrall and Barbara Eshbaugh as Petitioner for and as Appointee of the Guardianship in Ohio, conspired to deprive Irwin of his property without due process of law in violation of § 1983 by making false representations to the Butler County Probate Court which misled and encouraged the Court into seizing Irwin's assets and into shifting the burden of proof from the guardian of Ms. Worrall's estate to prove that Ms. Worrall was so incompetent as to be unable to have donative intent on September 4, 1991, and requiring Irwin to prove that his exceptions to the inventory are valid and that Ms. Worrall possessed donative intent on September 4, 1994;

4. Dennis G. Walsh, H. Vincent Walsh, Dennis L. Wittman, Barbara Eshbaugh, and Gregory Scott Beane conspired to deprive Irwin of his property without due process of law in violation of § 1983 by preventing Irwin or his attorney from having access to Ms. Worrall, his most important witness, and by sequestering and removing Ms. Worrall from Ohio without notice to or approval by the Butler County Probate Court;

5. Dennis G. Walsh, H. Vincent Walsh, Dennis L. Wittman individually and in their capacities as officers of the Court, and Mr. Worrall and Barbara Eshbaugh individually and as Petitioner and Appointee of the Guardianship in Ohio respectively, conspired to deprive Irwin of his property without due process of law in violation of § 1983 by making false representations to the Court causing it to issue a permanent injunction against Irwin without a hearing whereby all his assets within and without the jurisdiction of this Court are technically encumbered so that to this day Irwin cannot write a check on his own checking account;

6. First National Bank converted Irwin's property by endorsing two checks worth $127,072.02 and payable to 'James Irwin' as having been 'credited to the account of the payee' and then depositing these checks to the account of the guardianship, and by paying

these checks over an unauthorized endorsement;

7. IDS Financial Services converted Irwin's property by transferring securities worth approximately $134,869.10 to the guardianship of Ms. Worrall; and

8. IDS Financial Services failed to exercise due diligence in the protection of Irwin's accounts by taking adverse action on a Court Order defective on its face in that neither Irwin nor IDS Financial Services were parties to the proceedings in the Butler County Probate Court and thus the Probate Court did not have jurisdiction over them.

Mr. Irwin seeks the return of his property valued at approximately $262,000.00 as well as compensatory and punitive damages.

Mr. Worrall and the third-party defendants argue that they are entitled to summary judgment in their favor on Irwin's counterclaim and third-party claims.

The legal standard for consideration and disposition of issues on summary judgment is well settled and is set forth in *Goldstein v. D.D.B., Needham Worldwide, Inc.*, 740 F.Supp. 461, 463 (S.D.Ohio 1990).

### III.

Mr. Worrall and the third-party defendants contend that they are entitled to summary judgment in their favor on Irwin's § 1983 claims because Irwin has not made any showing that they acted under the color of state law. Mr. Worrall and the third-party defendants further argue that Irwin has failed to allege facts with sufficient specificity to demonstrate the existence of a conspiracy to violate his constitutional rights.

Irwin contends that third-party defendants Wittman and Eshbaugh's acts in connection with the Butler County Probate Court demonstrate sufficient state action. Irwin relies on *Macko v. Byron*, 576 F.Supp. 875 (N.D.Ohio 1983), *aff'd*, 760 F.2d 95 (6th Cir. 1985) to support his position that "if a person or group conspires to frustrate and violate the judicial process to an extreme and aggravated extent, there may be a § 1983 violation notwithstanding the absence of a state ac-

tor." The conspiracy here satisfies § 1983's state action requirement, *according to Irwin*, since it overwhelmed the Probate Court proceedings causing the Court to deprive Irwin of his property without due process.

### A.

■ In order for Irwin's § 1983 claims to survive the motions for summary judgment, Irwin must produce affirmative evidence indicating that Mr. Worrall and the third-party defendants deprived him of a federal constitutional right while acting under the color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 1732–33, 56 L.Ed.2d 185 (1978); *Brotherton v. Cleveland, M.D.*, 923 F.2d 477, 479 (6th Cir.1991); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989).

Counterclaim defendant and the third-party defendants are private individuals or entities whose conduct must be "fairly attributable to the State ..." in order to fall under the color of state law. *Simescu v. Emmet County Dept. of Social Services*, 942 F.2d 372, 374 (6th Cir.1991) (quoting *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2753–54, 73 L.Ed.2d 482 (1982)).

> Action taken by private individuals may be 'under the color of state law' when significant state involvement attaches to the action. Such involvement has been measured through various tests such as the public function test, the state compulsion test, the joint action test, and the nexus test.

*Wagner v. Metropolitan Nashville Airport Authority*, 772 F.2d 227, 229 (6th Cir.1985) (citations omitted).

To establish that the third-party defendants acted under color of state law Irwin argues that attorney Wittman provided false statements to the Probate Court for the purpose of obtaining a TRO against Irwin and attorney Wittman "had himself appointed as a process server, in order to facilitate service of the order and a subpoena on Irwin ..." Irwin argues that Wittman committed acts which satisfy the public function test by obtaining the power to serve process upon Ir-

win and subpoena Irwin, acts traditionally reserved to the courts. Irwin alleges, "Each of the defendants has, at some stage of the Butler County Probate proceedings, cooperated with Wittman in furtherance of Robert Worrall's interests, thus contributing to and participating in the deprivation of Irwin's constitutional rights of due process."

The public function test requires the exercise of powers "traditionally reserved to the state, such as holding elections or eminent domain." *Wolotsky v. Huhn,* 960 F.2d 1331, 1335 (6th Cir.1992) (citations omitted). Irwin's allegations are insufficient to make Wittman's acts and the other third-party defendants' acts fairly attributable to the state. The documents Wittman allegedly served on Irwin included "an order to Irwin to pay to the Court the sum of $71,896.38, along with a restraining order." Although courts typically serve copies of their orders through a clerk of courts, attorneys also routinely serve copies of such documents upon private parties to ensure that all parties obtain notice of court action. *See, e.g.,* Fed.R.App.P. 4(a)(6).

Assuming as true Irwin's other allegations against Guardian and the third-party defendants such as Wittman's act of obtaining the Probate Court's permission to serve documents, and the other third-party defendants' cooperation with Guardian to further Guardian's interests in the Probate Court, these allegations contain no indication of acts fairly attributable to the state. "Use of the courts by private parties does not constitute an act under color of state law." *Harvey v. Harvey,* 949 F.2d 1127, 1133–34 (11th Cir.1992); *see also McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir.1992).

Irwin's allegations concerning the misrepresentations allegedly made to the Probate Court by the third-party defendants—especially Wittman and Eshbaugh—are insufficient to establish state action. Irwin has failed to meet his burden on summary judgment of producing affirmative evidence connecting the Probate Court Judge with any conspiracy such that the third-party defendants who are private actors can be transformed into state actors. The deficiencies in Irwin's claims and proof are similar in this regard to the deficiencies found in *Harvey.*

In *Harvey,* the plaintiffs failed to show that the private actors became state actors by presenting a county probate judge with false information in order to obtain a guardianship order because there was no allegation that the judge was aware of the falsity of the information. 949 F.2d at 1133. Absent such an allegation the plaintiffs' claims failed to connect the private actors with a state actor. Irwin's allegations and proof suffer from the same deficiency. Irwin does not allege and has not presented affirmative evidence from which a reasonable juror could conclude that the Probate Court Judge knew of any falsity presented to him. Irwin's claims and proof therefore fail to show the existence of a conspiracy with a state actor. *See id.* His allegations at most raise the specter of a purely private conspiracy involving no state actors.

Irwin has not alleged facts or proof sufficient to show that attorneys Beane and Eshbaugh acted under the color of state law even though they obtained court-appointed positions. This is true since court-appointed attorneys do not generally act under the color of state law. *See Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (public defender does not act under color of state law); *see also Koenig v. Snead,* 757 F.Supp. 41, 43–44 (D.Or.1991), *aff'd,* 977 F.2d 589 (1992). "A lawyer appointed by the state, but who serves on behalf of an individual, 'acts in no sense as an officer of the state. For while he is an officer of the court his allegiance is to his client whose interests are ordinarily diametrically opposed to those of the state.'" *Koenig,* 757 F.Supp. at 43 (quoting, part, *United States ex. rel. Darcy v. Handy,* 203 F.2d 407, 426 (3rd Cir.) (en banc), *cert. denied,* 346 U.S. 865, 74 S.Ct. 103, 98 L.Ed. 375 (1953)). Similarly, a private person must do more than passively acquiesce to directions given by a state official before he or she can be found to have shared the common objective of a conspiracy and, therefore, become liable under § 1983. *See Taylor v. List,* 880 F.2d 1040, 1048 (9th Cir.1989). There is nothing in the record to suggest that Beane and Eshbaugh did more than passively acquiesce to the Probate

Judge's Orders. They cannot, therefore, become liable under § 1983.

Irwin attempts to show state action and § 1983 liability by relying on the existence of a conspiracy to dominate and control the Probate Court proceedings. Irwin relies on *Macko v. Byron,* 576 F.Supp. 875 (D.C.Ohio), to support his position that "if a person or group conspires to frustrate and violate the judicial process to an extreme and aggravated extent, there may be a § 1983 violation notwithstanding the absence of a state actor." *Macko,* however, is factually distinguishable. The plaintiffs in *Macko* alleged that the defendants—including state prosecutors—conspired to give false testimony to a grand jury to wrongfully obtain indictments against the plaintiffs. The district court stated, "[T]he fact that [defendants] in effect took over and controlled the judicial process by their conduct is sufficient to establish the 'under color of law' requirement of § 1983." *Id.* at 879. Irwin, in contrast, has neither alleged facts nor produced any affirmative evidence indicating that Guardian, attorneys Wittman and Eshbaugh, or any third-party defendants conspired to take over or in effect took over and controlled the Probate Court proceedings. Irwin was granted the right to participate in the Probate Court proceedings, he was made a party to the action and was given the opportunity to present the Probate Court with motions and testimony. He successfully appealed the decision of the Probate Court. The record therefore contains little indication that the third-party defendants dominated and controlled the proceedings or that Irwin was not given the opportunity to present his contentions to the Probate Court. There simply is no evidence in the record tending to show that a conspiracy to take over the Probate Court existed. Contrary to Irwin's contention, the circumstances by themselves do not provide affirmative proof from which a reasonable juror could conclude that a conspiracy to take over and control the judicial proceedings existed. *See infra,* § III(B).[2]

Accordingly, for all of the above reasons, Irwin has failed to meet his burden on summary judgment of producing affirmative evidence from which a reasonable jury could conclude that Guardian, Wittman and Eshbaugh, or any of the third-party defendants acted under the color of state law.

**B.**

■ Turning to Guardian and the third-party defendants' contention that Irwin's conspiracy claim lacks sufficient specificity to withstand summary judgment, Irwin argues that Wittman's acts as well as the entire circumstances surrounding the Probate Court proceedings demonstrate the existence of a conspiracy to violate his constitutional right to due process of law.

"A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Hooks v. Hooks,* 771 F.2d 935, 944 (6th Cir.1985).

> Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused further injury to the complainant.

*Id.*

At the summary judgment stage a party alleging the existence of a conspiracy to violate his or her constitutional rights must do more than speculate or conjecture about the conspiracy. *Moore v. City of Paducah,* 890 F.2d 831, 834 (6th Cir.1989). The record must contain affirmative evidence from which a jury could reasonably infer the existence of the alleged conspiracy. *See id.; Street,* 886

---

**2.** *Macko* also recognized that "if private persons conspire among themselves to selectively present evidence to a prosecutor in an attempt to obtain indictments ..., and the prosecutor is not part of the conspiracy, there could not be a cause of action under § 1983 ..., as there would be no state action." 576 F.Supp. at 881. Given the lack of involvement by a state official, such as a prosecutor, in the alleged conspiracy in the Probate Court, the instant case contains no state action.

F.2d at 1479. Direct evidence of a conspiracy is not required; circumstantial evidence may suffice to show the existence of a conspiracy. *See Moore,* 890 F.2d at 836 (Wellford, J. concurring) (citing *McCabe's Furniture, Inc. v. La–Z–Boy Chair Co.,* 798 F.2d 323, 328 (8th Cir.1986), *cert. denied,* 486 U.S. 1005, 108 S.Ct. 1728, 100 L.Ed.2d 193 (1988)); *Hampton v. Hanrahan,* 600 F.2d 600, 621 (7th Cir.1979), *rev'd, in part, on other grounds,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980).

Guardian and the third-party defendants are entitled to summary judgment in their favor on Irwin's conspiracy claims because the record contains no more than Irwin's speculation and conclusory statements regarding the existence of a conspiracy. Irwin has not pointed to affirmative evidence indicating that an agreement or a plan to violate his constitutional rights existed between Guardian and the third-party defendants. The circumstantial evidence relied on by Irwin suggests nothing more than zealous legal representation by the attorney third-party defendants and Irwin's lack of success in the Probate Court. "[M]erely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge." *Dennis v. Sparks,* 449 U.S. 24, 28, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980). While private parties who conspire with a judge may become state actors by virtue of an agreement to violate a party's constitutional rights, proof of the agreement must exist. *See Rankin v. Howard,* 633 F.2d 844, 850 (9th Cir.1980), *cert. denied,* 451 U.S. 939, 101 S.Ct. 2020, 68 L.Ed.2d 326 (1981), *overruled on other grounds, Ashelman v. Pope,* 793 F.2d 1072 (9th Cir.1986). Mere passive acquiescence to a court order does not suffice to establish the existence of the agreement or of a conspiracy. *See id.; see also Taylor,* 880 F.2d at 1048; *Dykes v. Hosemann,* 743 F.2d 1488, 1498–99 (11th Cir.1984), *cert. denied,* 479 U.S. 983 (1986); *Lintz v. Skipski,* 807 F.Supp. 1299, 1307–08 (W.D.Mich.1992), *aff'd,* 25 F.3d 304 (6th Cir.1994).

Irwin relies on *Jones v. City of Chicago,* 856 F.2d 985 (7th Cir.1988) to support his contention that his conspiracy claim should survive summary judgment since under *Jones* it is sufficient that Guardian and the third-party defendants held a common objective—to deprive Irwin of his property without due process of law and place it in Guardian's control—and that they agreed either implicitly or explicitly to further the conspiracy. Although *Jones* stands for these principles in general, the jury in *Jones* found that a conspiracy existed. *Id.* at 992. In contrast, the record in the instant case wholly lacks evidence from which a reasonable juror could conclude that Guardian or the third-party defendants possessed the common objective of wresting Irwin's property from him without due process of law or that they agreed either implicitly or explicitly to further the conspiratorial objective.

Accordingly, Irwin has not met his burden on summary judgment of producing affirmative evidence from which a reasonable jury could infer the existence of a conspiracy to violate his constitutional right to due process of law.

### C.

For all of the above reasons, Guardian and the third-party defendants are entitled to summary judgment in their favor on Irwin's claims under § 1983.

### IV.

Irwin claims that Guardian and the third-party defendants converted all of his property and particularly the amount of $262,941.21. Irwin alleges that Third National Bank converted his property by endorsing two checks worth $127,072.02 and depositing the checks to the account of the guardianship of Ms. Worrall thereby paying these checks over an unauthorized endorsement. Irwin claims that IDS Financial Services converted his property by transferring his securities in the amount of $134,869.10 to Ms. Worrall's guardianship, and that IDS failed to use due diligence when it transferred the securities to Guardian's account on the basis of the facially defective Probate Court Order.

Guardian and the third-party defendants argue that they are entitled to summary judgment in their favor because the issue of ownership of the property allegedly given to

Irwin by Ms. Worrall has been fully litigated and conclusively resolved in the Butler County Probate action. Guardian and the third-party defendants also assert that this Court should abstain from hearing Irwin's conversion claims under the doctrine announced in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and its progeny.

Irwin contends that his claims before this Court are not before the Ohio courts and that he seeks here to litigate different claims or causes of action. Irwin argues, "The issues of the defendants' alleged conspiracy to thwart James Irwin's exercise of his due process rights was neither addressed nor adjudicated in the Butler County Probate Court proceedings." Irwin argues that abstention is not warranted since his present claims are different from those before the Ohio Probate Court.

## A.

■ In Ohio, "the doctrine of claim preclusion bars relitigation of those claims upon which a final judgment on the merits has been rendered, as well as those claims which might have been litigated in the first lawsuit and which arise from the same subject matter and constitute the same cause of action." *Osborn v. Ashland County Bd. of Alcohol, et al.*, 979 F.2d 1131, 1133–34 (6th Cir.1992) (citations omitted); *Gutierrez v. Lynch*, 826 F.2d 1534, 1537 (6th Cir.1987).

Guardian and the third-party defendants' claim-preclusion contentions lack merit because there has been no final judgment on the issues raised in the guardians' motions for summary judgment. On April 11, 1994, the Twelfth District Court of Appeals reversed the Probate Court's judgment and remanded the case for a jury trial. The case is pending in the Ohio judicial system. *In re Guardianship of Worrall*, 1994 WL 123772, 1994 Ohio App. LEXIS 1515. Consequently, the factual issues relating to Ms. Worrall's competency and capacity to give her securities and other assets to Irwin are still unresolved. Irwin has voluntarily entered the guardianship proceedings in the Probate Court as a party, and the parties to that case have not fully litigated the above issues. Irwin is therefore not barred by Ohio rules of

issue and claim preclusion from raising his counterclaim and third-party claims in the instant case. *See Gutierrez*, 826 F.2d at 1537.

Accordingly, Guardian and third-party defendants' are not entitled to summary judgment in their favor on the basis of Ohio preclusion law.

## B.

■ *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) requires a federal court to abstain from interfering with a state criminal proceeding. "Thus, for example, a federal court could not entertain a [§] 1983 action that concerned the same issues as those being resolved in a state criminal proceeding." *Nilsson v. Ruppert, Bronson & Chicarelli Co., L.P.A.*, 888 F.2d 452, 454 (6th Cir.1989). This rule has been expanded to include federal abstention from a state civil case when action by a federal court would disrupt the comity between the state and federal systems because of a significant state interest in a particular proceeding. *Id.* (citing *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987)). Three elements apply:

> (1) state proceedings are pending; (2) the state proceedings involve an important state interest; and (3) the state proceeding will afford the plaintiff and adequate remedy.

*Id.*

Guardian and the third-party defendants correctly argue that *Younger* abstention applies to Irwin's conversion claims. There is no dispute that state probate proceedings are pending in the Ohio courts. Those proceedings involve important state interests such as the state's interest in the adjudication of a controversy over property located in Ohio. The State of Ohio also has an important interest in probate matters which federal courts do not generally share. *See Bedo v. McGuire*, 767 F.2d 305, 306–07 (6th Cir. 1985). As *Kokkonen v. Guardian Life Insurance Co.*, —— U.S. ——, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) reminds:

> Federal courts are courts of limited jurisdiction. They possess only that power

authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside their limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.

*Id.* at ——, 114 S.Ct. at 1675 (citations omitted). While this Court recognizes its diversity jurisdiction over Irwin's state law claims, this jurisdiction clashes with the Ohio Probate Court's "exclusive jurisdiction ... 'to direct and control the conduct and settle the accounts of executors, administrators and order the distribution of the estates.'" *Bedo,* 767 F.2d at 306 (quoting Ohio Rev.Code § 2101.24). The Ohio Supreme Court has recognized that Ohio probate courts have "plenary power at law and in equity to dispose of any matter that is properly before the court, unless the power is expressly otherwise limited or denied by statute." *In re Guardianship of Jadwisiak,* 64 Ohio St.3d 176, 180, 593 N.E.2d 1379 (1992) (quoting former Ohio Rev.Code § 2101.24(C); citing current Ohio Rev.Code § 2101.24(A)(1)(d), and (i), and (c)). Ohio probate courts have jurisdiction in the appointment and control of guardians. *In re Zahoransky,* 22 Ohio App.3d 75, 76, 488 N.E.2d 944 (1985). Ohio has therefore declared its strong interest in probate matters and has granted plenary power at law and in equity to the Probate Court. *See* Ohio Rev.Code § 2101.24(C).

In addition, "It is well settled that the federal courts have no probate jurisdiction." *Tonti v. Petropoulous,* 656 F.2d 212, 215 (6th Cir.1981). This rule applies to Irwin's conversion claims since those claims concern the disposition of money and securities presently in Ms. Worrall's estate. Whether the money and securities properly belong in the estate is the central question of the Ohio probate proceedings. This is readily seen in the Ohio Court of Appeals' opinion denying First National Bank and Guardian's motion for summary judgment:

> Since conflicting reasonable inferences can be drawn from the evidence as to Helen Worrall's alleged dependency, her mental capacity to make a gift, and the potential existence of undue influence by [Irwin], 'a resolution of these issues would necessarily require the court to weigh the evidence and judge the credibility of the witnesses, a process which is only for the trier of fact, at trial ...'

> Allegations of dependency, undue influence, and mental capacity necessarily raise questions of fact. Therefore, because genuine issues of material fact regarding the existence of a dependent relationship, undue influence, and the capacity of Helen Worrall to make a valid gift are present, the trial court erred in granting [First National Bank and Guardian's] motion for summary judgment.

*In re Worrall,* 1994 WL 123772 at *2, 1994 LEXIS 1515 at *5 (citations omitted).

Irwin's contention that the Ohio probate proceedings do not afford him an adequate opportunity to raise his federal constitutional claims lacks merit for two reasons: First, Irwin has not shown the color of state law element as required by § 1983, and therefore, his federal constitutional claims do not provide an independent basis for this Court to retain jurisdiction over Irwin's claims, and therefore, these claims cannot be the basis for avoiding *Younger* abstention. Second, Ohio has a strong interest in resolving Irwin's allegations concerning the third-party defendants' alleged attempt to subvert the Ohio judicial system. *Cf. Nilsson,* 888 F.2d at 454. As in *Nilsson,* the Ohio legal system has not ignored Irwin's claims. The Ohio Court of Appeals and the Ohio Supreme Court ruled, albeit unfavorably, upon Irwin's affidavit of bias and prejudice concerning the Probate Court Judge. The Ohio Court of Appeals has ruled in Irwin's favor on his appeal of the Probate Court's decision to grant Guardian and First National Bank's motion for summary judgment. The Appellate Court remanded the case for a jury trial. The proceedings in the Ohio courts have provided Irwin with due process of law, and therefore, as in *Nilsson,* "[T]hose grievances that ... [Irwin] argues led, and continues to lead, to the deprivation of his rights can be resolved in the state proceeding." *Id.* at 454. Thus, the Ohio judicial system has afforded and continues to afford Irwin the opportunity to litigate the substance of his conversion claims, particularly his claims that he owns

certain property, approximately $262,000.00, which has been wrongfully transferred to Guardian's account.

Accordingly, this Court must abstain from hearing Irwin's conversion claims.

### C.

■ IDS Financial Services argues that summary judgment in its favor is warranted because it is entitled to rely on the facial validity of the Probate Court Order which required it to transfer the securities to Guardian's account. Irwin contends that the Probate Court Order was facially invalid since Irwin was not a party to the Order. Irwin emphasizes that the Probate Court did not have personal jurisdiction over IDS Financial Services, and that IDS Financial did not contact him before transferring the securities even though Irwin was the account holder.

IDS Financial's motion for summary judgment is well taken since it was entitled to rely on the facially valid Probate Court Orders. *Cf. Duncan v. Peck,* 844 F.2d 1261, 1267–68 (6th Cir.1988).

> [T]he speedy administration of justice requires that the mandates of all courts and tribunals and persons possessing judicial power should be executed promptly and without hesitation by those to whom they are directed. To secure this, it is necessary that the law should throw its protecting mantle around those executing its mandates, and hold them harmless so long as they do only what they are commanded to do, without requiring them to determine whether it is rightly and properly commanded or not.

*Wholesale Electric & Supply, Inc. v. Robusky,* 22 Ohio St.2d 181, 184, 258 N.E.2d 432 (1970) (citation omitted). This reasoning applies to Irwin's claims against IDS Financial Services since it is necessary to generally protect the stability and integrity of financial transactions, and the banking and securities marketplace. A contrary holding would require financial institutions to engage in un-necessary, costly, and perhaps endless research into the validity of court orders or risk legal action from parties dissatisfied with the court orders. *See id.* IDS Financial Services is therefore entitled to summary judgment on Irwin's Ohio common law claims, and is protected by its good faith defense from Irwin's § 1983 claims. *Cf. Peck,* 844 F.2d at 1267–68 (distinguishing between qualified immunity and good faith defense).[3]

Accordingly, IDS Financial Services' motion for summary judgment is well taken.

### V.

■ During the show cause hearing on June 27, 1994, Guardian withdrew his claims to the extent the claims relied on the allegation that the exceptions and petitions Irwin filed in the Probate Court were frivolous. Since the focal point of Guardian's claims is the "frivolous" nature of Irwin's actions in the Ohio Probate Court, Guardian has in essence agreed to dismiss his common law claims against Irwin in this action.

To the extent Guardian did not intend to withdraw all of his complaint in this action, the Court finds that it must abstain under *Younger* from addressing the merits of these claims. The circumstances of this case satisfy the three elements of *Younger* abstention. *See supra,* § IV(B). There is an action pending in the Ohio courts. The Ohio Probate Court has exclusive jurisdiction to direct and control the conduct of Guardian, including removal of Guardian, if warranted, and to settle Guardian's account. *See* Ohio Rev. Code § 2101.24(A)(1)(d). This seems to be especially important in the instant case where the Ohio Court of Appeals has, at least by implication, determined that Irwin's claims are not frivolous by remanding the matter for jury trial. Given Guardian's contrary claim, the Ohio courts have a strong interest in resolving Guardian's claims and in controlling and directing Guardian's conduct.

---

**3.** Irwin's contention that the Probate Court did not have jurisdiction over IDS Financial Services lacks merit since a party may waive personal jurisdiction as IDS Financial Services did by complying with the Probate Court's Order. *See United States v. Gluklick,* 801 F.2d 834, 837 (6th Cir.1986), *cert. denied,* 480 U.S. 919, 107 S.Ct. 1376, 94 L.Ed.2d 691 (1987).

The Ohio Probate Court has plenary jurisdiction over Guardian's claims including statutory authority to transfer the case to the General Division of the Common Pleas Court, which was not done in this case. *See* Ohio Rev.Code § 2101.24(B)(2); *see also In re Guardianship of Jadwisiak,* 64 Ohio St.3d at 180, 593 N.E.2d 1379. Ohio courts therefore afford Guardian with a forum to determine his claims.

Accordingly, Guardian has withdrawn his claims to the extent they depend upon the allegation that Irwin's exceptions and petitions are frivolous. To the extent Guardian's claims go beyond the allegation of frivolousness, this Court must abstain from hearing Guardian's claims.

### VI.

In sum, Irwin has failed to produce affirmative evidence from which a reasonable juror could conclude that the third-party defendants acted under the color of state law or that the third-party defendants conspired to deprive Irwin of his property without due process of law. Consequently, Irwin's third-party claims under § 1983 lack merit.

The Court abstains under the doctrine of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) from hearing Irwin's conversion claims in light of the probate proceedings currently pending in the Ohio courts.

IDS Financial Services is entitled to summary judgment in its favor on Irwin's Ohio common law claims, and IDS Financial Services is protected by its good faith defense against Irwin's § 1983 claims.

Guardian has failed to show cause why his complaint should not be dismissed.

### ORDER

The Court hereby **ORDERS** that:

(1) Guardian's second motion for summary judgment on Irwin's amended counterclaim and third-party complaint is **GRANTED;**

(2) The third-party defendants' motions for summary judgment are **GRANTED;**

(3) Irwin's amended counterclaim and third-party complaint are **DISMISSED** as follows: Irwin's claims under 42 U.S.C. § 1983 are **DISMISSED** with prejudice; Irwin's Ohio claims against IDS Financial Services, Inc. are **DISMISSED** with prejudice; and Irwin's remaining Ohio common law claims are **DISMISSED** without prejudice;

(4) Guardian's claims and complaint against Irwin are **DISMISSED** without prejudice;

(5) Guardian's motion for an Order staying action on the complaint is **DENIED** as moot.

The case is terminated on the docket of this Court.

**IT IS SO ORDERED.**