Betty Banks HARVEY,
Plaintiff–Appellant,

v.

Joseph H. HARVEY, Jr., Dr. Mark F. Friedman, Dr. Conway Hunter, Charter–By–The–Sea, Inc. and William S. Perry, Defendants, Third–Party Plaintiffs, Appellees,

William T. Harvey, Joseph H. Harvey, III; Barbara H. Wiseman and Patricia H. Robinson, Third–Party Defendants.

No. 90–9066.

United States Court of Appeals, Eleventh Circuit.

Jan. 7, 1992.

Nancy Grey R. Grigg and Jesse W. Walters, Perry, Walters & Lippitt, Albany, Ga., for plaintiff-appellant.

Wallace E. Harrell, Gilbert, Harrell, Skelton, Gilbert, Sumerford & Martin, Brunswick, Ga., William E. Hoffmann, Jr., Frank C. Jones, King & Spalding, Atlanta, Ga., John T. McGoldrick, Jr., Martin, Snow, Grant & Napier, Macon, Ga., Joseph A. Mulherin, III, M. Brice Ladson, Bouhan, Williams & Levy, Savannah, Ga., and Philip R. Taylor, Fendig, McLemore, Taylor & Whitworth, Brunswick, Ga., for defendants-appellees.

Before EDMONDSON and DUBINA, Circuit Judges, and ESCHBACH *, Senior Circuit Judge.

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

EDMONDSON, Circuit Judge:

Plaintiff-appellant Betty Banks Harvey appeals the district court's decision dismissing her 42 U.S.C. § 1983 suit against her husband, Joseph H. Harvey, Jr., Dr. Conway Hunter, Jr., Dr. Mark F. Friedman, Charter-by-the-Sea, Inc., and William S. Perry, based on their respective roles in her involuntary commitment for mental health treatment. We AFFIRM the district court's judgment.

## BACKGROUND

In late October 1987, Mr. Harvey told Dr. Hunter that Harvey believed Mrs. Harvey was mentally ill. The doctor conducted an examination of Mrs. Harvey and, in accordance with Georgia law, O.C.G.A. § 37-3-41, signed a certificate stating that she appeared to be mentally ill and to present a substantial risk of imminent harm to herself or others. Dr. Hunter then directed the police[1] to pick up Mrs. Harvey and take her to Charter-by-the-Sea ("Charter"), a private hospital which had been designated as an emergency receiving and evaluating facility for involuntarily committed mental health patients.[2] Upon her arrival, she was examined by Dr. Friedman, who executed a certificate indicating Mrs. Harvey required involuntary treatment. *See* O.C.G.A. § 37-3-43.

Within a week, Mr. Harvey and his lawyer, Mr. Perry, obtained an order from Berrien County Probate Judge John P. Webb appointing Mr. Harvey as his wife's emergency guardian. Mrs. Harvey was then transferred to Duke University Hospital in North Carolina.

In April 1989, appellant filed suit against Mr. Harvey, Dr. Hunter, Dr. Friedman, Charter and Mr. Perry, claiming that she had been involuntarily incarcerated, given medications against her will, and never informed of her procedural rights under the Georgia Mental Health Act, O.C.G.A. § 37-3-1, *et seq.* Mrs. Harvey alleged that these violations arose as the result of a conspiracy among the doctors,[3] Mr. Harvey and Charter to deprive her of her rights. In a second count, she charged that Mr. Harvey and his lawyer, Mr. Perry, falsely informed Judge Webb of her condition so that the resulting guardianship order failed to comport with Georgia law. Each defendant filed a motion to dismiss,[4] and the motions were granted by the district court *Harvey v. Harvey*, 749 F.Supp. 1118 (M.D.Ga.1990).

## DISCUSSION

### CHARTER

The initial barrier to appellant's relief from Charter is that the actions she questions are actually the actions of Charter's employees, not the actions of the hospital itself. The complaint alleges Mrs. Harvey was placed on a locked ward and given medication against her will. The hospital organization did not take these steps, hospital employees did.

■ A defendant cannot be held liable under section 1983 on a respondeat superior or vicarious liability basis. *Monell v. Department of Social Serv.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *Monell* involved a municipal corporation, but every circuit court to consider the issue has extended the holding to private corporations as well. *See Lux v. Hansen*, 886 F.2d 1064, 1067 (8th Cir.1989) (private mental health center); *Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir.1982) (department store); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir.1982) (security guard employer); *see also Jones*

---

1. No police officer is a defendant; nor are policemen alleged to be co-conspirators with defendants.

2. Under Georgia law, the state determines which state-owned and state-operated facilities are emergency facilities; private hospitals may be so designated at their request. O.C.G.A. § 37-3-40.

3. Mrs. Harvey claimed the doctors' examinations were insufficient, and thus the certificates leading to her commitment were false.

4. Charter and Mr. Harvey filed jointly. Dr. Friedman also filed a motion to dismiss for lack of venue or transfer for improper venue, which was denied.

*v. Preuit & Mauldin,* 851 F.2d 1321, 1325 (11th Cir.1988) (en banc), *vacated on other grounds,* 489 U.S. 1002, 109 S.Ct. 1105, 103 L.Ed.2d 170 (1989) (private defendants in 42 U.S.C. § 1983 actions should have at minimum same defenses available to public defendants). We believe the same holds true for Charter: the hospital cannot be faulted for the conduct of its employees.

Even if Mrs. Harvey could attribute liability to Charter directly and not vicariously, she is unable to state a claim for section 1983 relief. A successful section 1983 action requires a showing that the conduct complained of (1) was committed by a person acting under color of state law and (2) deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 156–57, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978). Taking the factual allegations of Mrs. Harvey's complaint as true, which we must do when reviewing motions to dismiss, *Walker Process Equip. v. Food Machinery & Chemical Corp.,* 382 U.S. 172, 174–75, 86 S.Ct. 347, 348–49, 15 L.Ed.2d 247 (1965), we see a claim for deprivation of a constitutional right: involuntary commitment implicates the liberty interest protected by the due process clause of the Fourteenth Amendment.[5] *Addington v. Texas,* 441 U.S. 418, 425, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979). So, the critical question before this court is whether Charter acted under color of state law or, in the context of the Fourteenth Amendment, whether Charter's alleged actions are "fairly attributable to the State." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982).[6]

For a defendant's actions to be fairly attributable to the state, "[f]irst, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id.,* 102 S.Ct. at 2753–54.[7] Mrs. Harvey's complaint survives the first part of the test: her commitment at Charter was made possible by Georgia statute. Her complaint ultimately fails, however, because Charter is no state actor.

Only in rare circumstances can a private party be viewed as a "state actor" for section 1983 purposes. The Eleventh Circuit recognizes three tests for establishing state action by what is otherwise a private person or entity: the public function test, the state compulsion test, and the nexus/joint action test. *NBC v. Communication Workers of America, AFL–CIO,* 860 F.2d 1022, 1026 (11th Cir.1988). An analysis under each test reveals no state action in this case.

We agree with *Watkins v. Roche,* 529 F.Supp. 327, 331 (S.D.Ga.1981), that the Georgia statutes neither compel nor encourage involuntary commitment, precluding Charter's becoming a state actor by

5. Mrs. Harvey's complaint also purports to allege violations of the Fourth and Sixth Amendments.

6. In *Lugar v. Edmondson Oil Co.,* the Supreme Court explained the relationship between the section 1983 requirement of acting under color of state law and the Fourteenth Amendment requirement of state action:

[A]lthough we hold that conduct satisfying the state-action requirement of the Fourteenth Amendment satisfies the statutory requirement of action under color of state law, it does not follow from that that all conduct that satisfies the under-color-of-state-law requirement would satisfy the Fourteenth Amendment requirement of state action. If action under color of state law means nothing more than that the individual act "with the knowledge of and pursuant to that statute," *Adickes v. S.H. Kress & Co.,* 398 U.S. [144] 162, n. 23, 90 S.Ct. [1598] 1611 n. 23 [26 L.Ed.2d 142], then clearly under *Flagg Brothers* that would not, in itself, satisfy the state-action requirement of the Fourteenth Amendment.

*Lugar,* 457 U.S. 922, 935 n. 18, 102 S.Ct. 2744, 2753 n. 18, 73 L.Ed.2d 482 (1982).

7. While these two principles merge in some cases, they diverge when the constitutional claims are directed against a private party. *Id.* at 937, 102 S.Ct. at 2754.

state compulsion.[8] Like the plaintiff in the similar case of *Spencer v. Lee*, Mrs. Harvey cannot seriously allege that "the relevant provisions of the Mental Health Code were enacted because the state wants to encourage commitments, any more than state repossession laws are passed because states want to encourage creditors to repossess their debtors' goods." *Spencer v. Lee*, 864 F.2d 1376, 1379 (7th Cir.1989) (en banc) (citation omitted), *cert. denied,* — U.S. ——, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990).

■ Nor does the statute create a sufficiently close nexus between the state and Charter to mandate Charter's classification as a state actor. *Watkins*, 529 F.Supp. at 329. The nexus/joint action test involves situations where the government has "so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *NBC*, 860 F.2d at 1026 (citation omitted). Both the Supreme Court and our predecessor circuit[9] have concluded that such a nexus is lacking in circumstances much more compelling than the circumstances of this case. *See Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (private nursing home not state actor despite extensive regulation and 90% fees from state); *Rendell–Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) (private school that treats students with drug/alcohol problems not state actor despite operating under contract with the state and receiving 90% state funding); *Greco v. Orange Memorial Hosp. Corp.*, 513 F.2d 873 (5th Cir.1975) (no state action where private hospital operated on land

leased from county). So, we are unable to convert Charter into a state actor under the nexus or joint action test.

■ Appellant finally argues that the commitment process is a traditional public function, implying that state law guiding private participation in this function effectively transforms the private participant into a state actor. But this argument does not take the public function analysis far enough. That the private party has powers *co-extensive* with the state is irrelevant;[10] the public function test shows state action only when private actors are given powers (or perform functions) that are "traditionally the *exclusive* prerogative of the State." *Id.* (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 353, 95 S.Ct. 449, 454–55, 42 L.Ed.2d 477 (1974)) (emphasis added).

Few activities are "exclusively reserved to the states." *Flagg Brothers*, 436 U.S. at 158–59, 98 S.Ct. at 1734; *see also White v. Scrivner Corp.*, 594 F.2d 140, 142 (5th Cir. 1979) (public function "embraces very few activities"; even arrest, detention, and search are not exclusively reserved to states). We are unwilling to categorize involuntary commitment in Georgia as a function so reserved to the state that action under the commitment statute transforms a private actor into a state actor.[11]

Nothing in *Burch v. Apalachee Community Mental Health Serv., Inc.*, 840 F.2d 797 (11th Cir.1988) (en banc), *aff'd, Zinermon v. Burch*, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990), precludes this result.[12] Like Charter, Apalachee Communi-

---

**8.** *Watkins* involved a Georgia statute governing the involuntary commitment process in cases of drug or alcohol abuse. *Watkins*, 529 F.Supp. at 329.

**9.** In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit issued prior to October 1, 1981.

**10.** On this basis we disagree with *Ruffler v. Phelps Memorial Hosp.*, 453 F.Supp. 1062 (S.D.N.Y.1978). In that case the court only inquired as to the public nature of the function and did not determine if exclusivity existed.

**11.** The court in *Spencer* reviews the history of private commitment of the mentally ill and likewise concludes that the activity remains private despite similar state regulation. *Spencer*, 864 F.2d at 1380–81.

**12.** *Burch* involved a patient allegedly admitted to mental treatment facilities pursuant to "voluntary" admission forms which he signed while heavily medicated and disoriented. Burch was first admitted to a private hospital, Apalachee Community Mental Health Services ("ACMHS"), where he was diagnosed as having paranoid schizophrenia, and given psychotropic drugs. Because ACMHS could not provide the full treatment Burch needed, he was transferred to

ty Mental Health Services ("ACMHS"), was a private facility designated under state law as an emergency receiving and treatment facility for the mentally ill. *Zinermon*, 494 U.S. at 117, 110 S.Ct. at 979.[13] But unlike Charter, ACMHS maintained that it was "an alter ego or arm of the State" throughout the *Burch* case's torturous progression through the federal courts. ACMHS Original (Panel) Brief pp. 3, 18; ACMHS En Banc Brief pp. 3, 17. Neither the panel nor the en banc court in *Burch* needed to resolve ACMHS' status as a state actor because that status was never disputed. The vacated panel opinion noted "Burch would lack a federal cause of action against ACMHS if further development of the facts disclosed that the facility was not acting 'under color' of state law." *Burch v. Apalachee Community Mental Health Serv.*, 804 F.2d 1549, 1557 n. 13 (11th Cir. 1986). The en banc majority's "conclusion" that state action exists, *Burch*, 840 F.2d at 803, is merely a restatement of what the parties themselves had already agreed. The dissent accurately characterized the court's deliberations on the subject when the dissent stated that it was *"assume[d]* here that Burch was involuntarily institutionalized by persons acting under color of state law." *Burch*, 840 F.2d at 810 (Tjoflat, J., dissenting) (emphasis added). Because reference to ACMHS' state action is necessarily grounded on this assumption, about which there was no controversy, *Burch* did not decide—and therefore cannot control—the issue of whether a private hospital designated under state law as a facility for the mentally ill is actually a

state actor sufficient to bring the hospital within the restraints of 42 U.S.C. § 1983.

■ At most, the Georgia statute functions as a licensing provision enabling the hospital to receive mental patients; licensing and regulation are not enough to transform private hospitals into state actors for section 1983 purposes. *See San Francisco Arts & Athletics, Inc. v. Olympic Committee*, 483 U.S. 522, 544, 107 S.Ct. 2971, 2985, 97 L.Ed.2d 427 (1987) (extensive government regulation does not transform actions of regulated entity into those of government); *Cobb v. Georgia Power Co.*, 757 F.2d 1248, 1250–51 (11th Cir.1985) (same). To hold otherwise would expose private hospitals and private physicians to section 1983 liability whenever they act pursuant to the Georgia commitment statutes, despite the fact that their actions ultimately reflect medical judgments made according to professional standards that are not established by the state. *See Blum*, 457 U.S. at 1008, 102 S.Ct. at 2788; *see also Lugar*, 457 U.S. at 937, 102 S.Ct. at 2754 ("Without a limit such as this, private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them"). We therefore affirm the district court's dismissal of Charter-by-the-Sea.

### MR. HARVEY, DR. HUNTER and DR. FRIEDMAN

■ The remaining appellees are persons acting in a private capacity: Mr. Harvey is a private citizen, and Drs. Hunter and Friedman are private physicians unaffiliated with a state institution.[14] Applying

---

Florida State Hospital ("FSH"), which required signing another set of voluntary admissions forms. Throughout his stay at the two hospitals, Burch was never given a hearing at which to challenge his confinement and treatment. *Burch*, 840 F.2d at 799. He ultimately brought a Section 1983 action against ACMHS and the FSH employees connected with his admission and treatment. *Id.* The opinion of the Eleventh Circuit panel that originally heard the case, *Burch v. Apalachee Community Mental Health Serv.*, 804 F.2d 1549 (11th Cir.1986), was vacated and the case was heard en banc. The en banc majority (with five judges concurring and two judges specially concurring) decided plaintiff's complaint sufficiently stated a cause of

action under section 1983 against ACMHS and the individual defendants. *Burch v. Apalachee Community Mental Health Serv.*, 840 F.2d 797 (11th Cir.1988) (en banc).

**13.** ACMHS was not a party when the case reached the Supreme Court. Therefore, the Supreme Court's opinion dealt only with Florida State Hospital employees.

**14.** In contrast, the individual defendants in *Burch* were unquestionably state employees: all were employed by Florida State Hospital, a state-operated medical facility. *See also West v. Atkins*, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d

the same three-test analysis we applied to Charter mandates the same conclusion when applied in the context of these private individuals. There was no state action.

■ Moreover, private persons such as Mr. Harvey who act pursuant to state statutes to commit the mentally ill cannot be held liable under section 1983. *See Dahl v. Akin,* 630 F.2d 277, 281 n. 3 (5th Cir.1980) (because statute allowed *any* adult person to initiate commitment proceedings, actual initiator could not be assumed to have acted in official capacity). In *Spencer,* not only the majority but also the dissent apparently agreed that members of the general citizenry cannot be considered state actors when they decide to institutionalize a patient. *Spencer,* 864 F.2d at 1381–82; *Id.* at 1383 (Ripple, J., concurring in part and dissenting in part); *id.* at 1389 (Cummings, J., dissenting).

■ Mrs. Harvey also argues that Dr. Hunter and Mr. Harvey were transformed into state actors because they conspired with alleged state actors Charter and Dr. Friedman to have her committed. "[T]o act under color of state law for (Section) 1983 purposes does not require that the Defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents." *Dennis v. Sparks,* 449 U.S. 24, 27, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980). This argument fails on two grounds. First, because we find *none* of the appellees to be state actors, all parties retain their private status; and no state actor exists with whom conspiracy is possible. And second, even construing the complaint liberally, Mrs. Harvey has failed to plead conspiracy adequately.

■ For purposes of 42 U.S.C. § 1983, the plaintiff must plead in detail, through reference to material facts, the relationship or nature of the conspiracy between the state actor(s) and the private persons. *Fullman v. Graddick,* 739 F.2d 553, 556–57 (11th Cir.1984). The allega-

tions of Mrs. Harvey's complaint merely string together the discrete steps of the commitment process, without showing contacts between the appellees that could prove private and alleged state actors had "reached an understanding" to violate her rights. *See Strength v. Hubert,* 854 F.2d 421, 425 (11th Cir.1988) (citations omitted). Therefore, even if one of the appellees actually was a "state actor," Mrs. Harvey's complaint consists of purely conclusory allegations that do not plead conspiracy sufficiently to transform the other appellees into state actors. The district court properly dismissed the complaint against Mr. Harvey, Dr. Hunter, and Dr. Friedman.

## MR. HARVEY and MR. PERRY

■ Mrs. Harvey also claims Mr. Harvey and Mr. Perry became state actors by conspiring with Judge Webb to secure the guardianship order. A county probate judge clearly is a state actor; so, if properly alleged, "the private parties conspiring with the judge were acting under color of state law; and it is of no consequence that the judge himself is immune ..." *Dennis,* 449 U.S. at 28, 101 S.Ct. at 186. Once again, appellant's complaint fails: she argues that Perry and Mr. Harvey provided the judge with false information, but no allegation says the judge was aware of this falsity. Without the judge's knowledge, the complaint fails to properly allege conspiracy involving a state actor. At best, it presents a claim for misuse of state judicial procedures, for which there is no action under section 1983. *See Beker Phosphate Corp. v. Muirhead,* 581 F.2d 1187, 1189 (5th Cir.1978).

■ Likewise, Perry and Mr. Harvey cannot be liable under section 1983 for their resort to state tribunals. Use of the courts by private parties does not constitute an act under color of state law. *Torres v. First State Bank of Sierra County,* 588 F.2d 1322 (10th Cir.1978). *See also Cobb v. Georgia Power Co.,* 757 F.2d

40 (1988) (physician under contract with state to provide medical services in prison is state employee and thus state actor); *Watkins v. Roche,* 560 F.Supp. 416 (S.D.Ga.1983), *aff'd. sub*

*nom Watkins v. Crouch,* 751 F.2d 1260 (11th Cir.1985), (finding state action by two doctors who rendered services for state mental institution).

1248, 1251–52 (11th Cir.1985) (obtaining temporary restraining order from state court does not constitute action under color of state law); *Dahl,* 630 F.2d at 281 n. 3 (same regarding obtaining guardianship order). The district court correctly dismissed these claims against Mr. Harvey and Mr. Perry.

## CONCLUSION

We have looked carefully at the complaint. We refuse to presume that acting in accordance with state law governing involuntary commitment automatically converted these private actors into state actors. Because we find no state actors, there can be no state-based conspiracy as an alternative means of showing state action. In addition, such a conspiracy has not been properly pled. The district court is AFFIRMED.