**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5711-18T4

RAMAPO HUNT & POLO CLUB
ASSOCIATION, INC.,

     Plaintiff-Respondent,

v.

RAMAPOUGH MOUNTAIN
INDIANS, INC.,

     Defendant-Appellant.

_____

TOWNSHIP OF MAHWAH,

     Plaintiff,

v.

RAMAPOUGH MOUNTAIN
INDIANS, INC.,

     Defendant-Appellant.

_____

Argued October 21, 2020 – Decided January 12, 2021

Before Judges Fuentes, Whipple and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket Nos. L-3189-17 and L-6409-17.

J. Remy Green argued the cause for appellant (Bennet D. Zurofsky and Cohen & Green, PLLC, attorneys; Bennet D. Zurofsky and J. Remy Green, on the briefs).

Justin D. Santagata argued the cause for respondent (Kaufman, Semeraro, & Leibman, LLP, attorneys; Justin D. Santagata, on the brief).

PER CURIAM

Defendant, Ramapough Mountain Indians Inc. (RMI), owns real property at 95 Halifax Road (95 Halifax), in Mahwah. RMI appeals from a June 7, 2019, order denying its motion for counsel fees and costs under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc-2000c-5 (RLUIPA, or the Act) and 42 U.S.C. § 1988 against an abutting landowner, plaintiff Ramapo Hunt & Polo Club Association, Inc. (Polo Club).

Our review of the record reveals that on May 9, 2017, the Township of Mahwah (the Township) filed a complaint against RMI to enjoin violations of the Township's zoning ordinance pursuant to N.J.S.A. 40:55D-18 because RMI appeared to be erecting buildings or other prohibited structures.

Four months later, plaintiff Polo Club, a nonprofit homeowners association, filed a verified complaint and order to show cause seeking

temporary restraints against RMI and the Township, alleging RMI was engaging in various activities, uses, or actions at 95 Halifax in violation of the Township zoning ordinances and seeking an injunction for compliance of the zoning ordinances. Specifically, "the main uses that the [Polo Club was] complaining about . . . [were] public assembly, religious use and house of worship camping and campgrounds, that w[ere] not permitted." The Polo Club and Township's lawsuits were eventually consolidated.

An order to show cause was denied on December 15, 2017, after RMI rectified certain zoning violations in response to the lawsuits. Nevertheless, the case continued to move forward on the underlying complaint. The Township settled with RMI just before trial; however, the Polo Club declined to join in the settlement. Thus, the court conducted a bench trial from April 1 to May 3, 2019, to address the Polo Club's complaint. After the Polo Club presented its case in chief, the trial court granted RMI's motion for a directed verdict, stating:

> The [c]ourt has gotten, and [the Township] has freely come to resolution with [RMI] that there's no longer going to be erection of buildings, etc. There is a recognition that this property is in a flood plain, and as such, will not be used in the future in the unlawful way.
>
> . . . .
>
> So the relief -- and I have always been curious as to what the relief the plaintiff [is] now seeking insofar

as there are no longer those violations of law. It appeared that there is a request to enjoin [RMI] from gathering on the land and praying, and that public assembly is prohibited by the zoning laws per the claim of the plaintiff[]. Well, people can assemble in their homes, people may be able to park on the street, if they can't park on the street they can get parking tickets, but the relief being requested today is not fathomable, [t]he [c]ourt notes, for injunctive relief. The parties seeking the injunction must have no adequate remedy at law. Here we know that there are zoning laws and they're being enforced to comply with and agreed to.

. . . .

This [c]ourt is mindful [of] the First Amendment of the United States Constitution. . . . To now say that this court should enjoin people from freely assembling on property and praying goes against it. That would be inappropriate court action and authority. Certainly, this court would never do that. It would be a prior restraint on the liberty of a free people to assemble and gather on their property and to that which they say they're allowed to do and which the law recognizes that they are allowed to do.

The [c]ourt also does not see any violations of law currently occurring. Assemblage on property that they own and praying is no more violative of the law than me having a party over at my own home. This is their land, it's 13.8 acres of their land that they are allowed to go on. They are permitted to put stones in a circle and place tree stumps upright and to leave a stone pillar where it's been. They may not have the right to park illegally, they do not have the right to build a structure, etc., but they already recognize that. [The Township] has enforced [its] ordinances and the RMI ha[s] obeyed now and been fined, and ha[s] settled

4

those matters. . . . There is no showing that [the Township's] not enforcing the law as of today and, as such, being that there is no current violation, or one even being contemplated, [t]he [c]ourt is devoid of any evidence and finds that plaintiff[] ha[s] failed to show a prima facie case to give a restraint as a matter of law against the defendant[] and, as such, the application is denied and the case is dismissed that is presently before this court, and the other case that was consolidated with this has been dismissed as settled.

Because the court found that the Polo Club did not establish its prima facie case, RMI presented no evidence regarding the RLUIPA affirmative defense it pleaded in its answer. The court entered an order dismissing the Polo Club's complaint, and that order has not been appealed.

On May 13, 2019, RMI moved to amend the trial court's order pursuant to Rules 1:1-2(a); 4:50-1(f); 4:42-8(a); and 4:42-9(a)(8), "to include an award of costs to [d]efendant inclusive of reasonable attorneys' fees pursuant to RLUIPA and 42 U.S.C. § 1988." On June 7, 2019, the court denied RMI's motion for costs. This appeal followed.

Ordinarily, we review a Rule 4:50-1 motion for a clear abuse of discretion. US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012); Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994). Under the "American Rule," which is followed by the federal courts and by the courts of this state, "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee

from the loser." Alyeska Pipeline Serv. Co. v. Wilderness Society, 421 U.S. 240, 247 (1975); Gerhardt v. Continental Ins. Cos., 48 N.J. 291, 301 (1966); R. 4:42-9. A prevailing party is entitled to an award of counsel fees only if they are expressly provided for by statute, court rule, or contract. See R. 4:42-9. Thus, the trial judge's reasons for denying RMI's motion are questions of law, which we review de novo. Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 382-83 (2010).

On appeal, RMI contends the trial court improperly denied its motion for "those routine costs that every prevailing litigant is entitled to, inclusive of the attorneys' fees that [RLUIPA] and 42 U.S.C. § 1988 expressly provide." The trial court denied RMI attorneys' fees under RLUIPA for multiple reasons: (1) the matter was brought before the court on a motion for an order to show cause, not by way of a complaint and answer, and therefore it was not a judgment resulting from trial; (2) defendants never filed an action requesting attorneys' fees and costs if they were successful and did not specify a monetary amount; and (3) it is unclear whether RLUIPA applied in this action, as RLUIPA claims may be raised against a government, and the Polo Club cannot be considered a government as defined by the statute. However, accepting for the sake of this

A-5711-18T4

discussion that RMI's RLUIPA claim was properly before the court, we are constrained to affirm.

## I.

Congress passed RLUIPA in response to the United States Supreme Court's invalidation of the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. § 2000bb, as applied to the states and their subdivisions, in City of Boerne v. Flores, 521 U.S. 507 (1997). Cutter v. Wilkinson, 544 U.S. 709, 715 (2005) (noting that in Boerne, the Court "invalidated RFRA as applied to States and their subdivisions, holding that the Act exceeded Congress' remedial powers under the Fourteenth Amendment."). RLUIPA invokes federal authority under the Spending and Commerce Clauses and targets two areas: "Section 2 of the Act concerns land-use regulation, 42 U.S.C. § 2000cc; § 3 relates to religious exercise by institutionalized persons, § 2000cc-1." Ibid. Section 2 of the Act, at issue here, establishes a "general rule" that:

> No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution--
>
> (A) is in furtherance of a compelling government interest; and

A-5711-18T4

(B) is the least restrictive means of furthering that compelling government interest.

[42 U.S.C. § 2000cc(a)(1).]

This "general rule," however, is circumscribed to apply only to cases where:

(A) the substantial burden is imposed in a program or activity that receives Federal <u>financial assistance</u>, even if the burden results from a rule of general applicability;

(B) the substantial burden affects, or removal of that substantial burden would affect, <u>commerce</u> with foreign nations, among the several States, or with <u>Indian tribes</u>, even if the burden results from a rule of general applicability; or

(C) the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, <u>individualized assessments</u> of the proposed uses for the property involved.

[42 U.S.C. § 2000cc(a)(2) (emphasis added).]

The applicability of the land use provisions depends on one of the jurisdictional clauses enumerated in 42 U.S.C. § 2000cc(a)(2). <u>See, e.g.</u>, <u>Westchester Day Sch. v. Village of Mamaroneck</u>, 504 F.3d 338, 353-54 (2d Cir. 2007) ("By limiting RLUIPA's scope to cases that present one of these jurisdictional nexuses, Congress alternatively grounded RLUIPA, depending on

8

the facts of a particular case, in the Spending Clause, the Commerce Clause and . . . the Fourteenth Amendment.").

Application of the Spending Clause, 42 U.S.C. § 2000cc(a)(2)(A), requires proof that "the substantial burden is imposed in a program or activity that receives Federal financial assistance, even if the burden results from a rule of general applicability." 42 U.S.C. § 2000cc(a)(2)(A) (emphasis added). In addressing the constitutional underpinnings of RLUIPA, courts have refused to permit actions against defendants that were non-recipients of federal funds. See Sharp v. Johnson, 669 F.3d 144, 153-55 (3d Cir. 2012). Here, there is nothing in the record that demonstrates the Polo Club can be subject to liability under RLUIPA by means of the Spending Clause.

We also question the applicability of RLUIPA under the Commerce Clause, 42 U.S.C. § 2000cc(a)(2)(B). 42 U.S.C. § 2000cc(a)(2)(B) requires proof that "the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes . . . ." 42 U.S.C. § 2000cc(a)(2)(B) (emphasis added); see, e.g., Rocky Mountain Christian Church v. Bd. of Cty. Comm'rs of Boulder Cty., 481 F. Supp. 2d 1213, 1222-25 (D. Colo. 2007) (noting the Commerce Clause hook of 42 U.S.C. § 2000cc(a)(2)(B)). As the Supreme Court has explained, the

satisfaction of such a jurisdictional element permits Congress to exercise congressional power, because an interstate commerce nexus must be exhibited for the statute to operate. See United States v. Morrison, 529 U.S. 598, 611-12 (2000).

The record here is devoid of any evidence showing a nexus between a substantial burden on RMI's religious exercise and the Commerce Clause. Nor is it readily apparent how RMI's religious use of the property is economic in nature or affects the "channels of interstate commerce," "persons or things in interstate commerce," or "those activities that substantially affect interstate commerce." Nat'l Fed'n of Indep. Bus. v. Sebelius, 567 U.S. 519, 536 (2012) (quoting Morrison, 529 U.S. at 609). Although RMI contends that the Polo Club's request to enjoin religious practice would affect interstate and intertribal commerce because members of other indigenous tribes often join RMI for religious ceremonies and conduct extensive cultural exchange on the land, there is no evidence in the record to substantiate this claim.

Even if we were to remand for further examination of those questions, it would be unlikely to change the outcome because RLUIPA claims can only be raised against a "government." The trial court found Polo Club was not a government as defined by the statute. RMI contends the trial court erred because

10

the Polo Club was acting under the color of state law and therefore fits within the statutory definition of "government." We disagree.

## II.

The Act confers a "cause of action" to aggrieved persons who bring a "claim or defense in a judicial proceeding" seeking to "obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a) (emphasis added). Under the Act, "government," in pertinent part, is defined as:

> (i) a [s]tate, county, municipality, or other governmental entity created under the authority of a [s]tate;
>
> (ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (i); and
>
> (iii) any other person acting under color of [s]tate law.
>
> [42 U.S.C. § 2000cc-5(4)(A) (emphasis added).]

RMI argues that the Polo Club was acting under the color of state law when it pleaded the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-18, to enforce the municipality's local zoning ordinances. Under MLUL, "an interested party . . . may institute any appropriate action or proceedings to prevent . . . restrain, correct or abate [a violation of a municipal ordinance]." N.J.S.A. 40:55D-18. The statute defines an "interested party" as "any person . . . whose right to use, acquire, or enjoy property is or may be affected by . . . an action or

11

failure to act under [the MLUL]." N.J.S.A. 40:55D-4. In other words, while the authority to enforce land use ordinances is generally left to the municipality, the MLUL affords private "interested parties," such as a neighboring property owner, the right to enforce zoning ordinances. N.J.S.A. 40:55D-18. In order to determine whether the Polo Club was acting "under color of state law," we are therefore called upon to determine whether, under these circumstances, actions by a private party rose to the level of state action.

Generally, a private person or entity acting on its own cannot deprive an individual or group of their constitutional rights. Lugar v. Edmondson Oil Co., 457 U.S. 922, 936-37 (1982) ("As a matter of substantive constitutional law the state-action requirement reflects judicial recognition of the fact that 'most rights secured by the Constitution are protected only against infringement by governments.'") (quoting Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 156 (1978)). However, a private party's actions may be deemed state action when those actions are "fairly attributable to the state." Id. at 937. Since the Polo Club is a private association, it can only be liable for constitutional violations under RLUIPA if it can fairly be considered to have been operating under the "color of state law." 42 U.S.C. § 2000cc-5(4)(A)(iii). Thus, we must determine whether

the Polo Club's efforts to use the MLUL to enjoin RMI's religious gatherings rendered it a state actor.

In Brentwood Academy v. Tennessee Secondary School Athletic Ass'n, 531 U.S. 288, 295-96 (2001), the Supreme Court explained that the analysis of whether state action is present "lack[s] rigid simplicity." The Court recently clarified the test:

> Under this Court's cases, a private entity can qualify as a state actor in a few limited circumstances—including, for example, (i) when the private entity performs a traditional, exclusive public function; (ii) when the government compels the private entity to take a particular action; or (iii) when the government acts jointly with the private entity . . . .
>
> [Manhattan Cmty. Access Corp. v. Halleck, 139 S. Ct. 1921, 1928 (2019) (internal citations omitted).]

The authority to enforce land use ordinances generally resides with the municipality. N.J.S.A. 40:55D-18. However, private "interested parties" such as the Polo Club can also enforce zoning ordinances. Ibid. Interested party status does not, in and of itself, transform Polo Club into a state actor. RMI argues the Polo Club was acting in concert with the Township and pursuant to the Township's delegation of its zoning enforcement authority. RMI also asserts the Polo Club and the Township were acting jointly because they asserted a common interest and entered into a joint defense litigation agreement. However, utilization of a beneficial

litigation strategy does not transform the Polo Club into a state actor for purposes of counsel fees and costs under RLUIPA and 42 U.S.C. § 1988.

Furthermore, we do not read N.J.S.A. 40:55D-18 as either compelling or delegating enforcement authority to the Polo Club; rather, it merely provides standing to the "interested party." N.J.S.A. 40:55D-18 affords standing to interested parties to institute an appropriate action or proceeding to prevent unlawful construction. "'Interested parties' are in turn defined by N.J.S.A. 40:55D-4 in relevant part as 'any person, whether residing within or without the municipality, whose right to use, acquire, or enjoy property is or may be affected by any action taken under the [MLUL].'" DePetro v. Twp. of Wayne Planning Bd., 367 N.J. Super. 161, 170 (App. Div. 2004).

Further examination of the ways the Polo Club's lawsuit arguably militates a finding of state action leaves us unpersuaded. "The Supreme Court has mapped out three routes that can lead to a finding that a private party 'may fairly be said to be a state actor.'" Jarvis v. Village Gun Shop Inc., 805 F.3d 1, 8 (2015) (citing Lugar, 457 U.S. at 937). Significantly, finding that a private entity is a "state actor" occurs "'[o]nly in rare circumstances.'" Ibid. (alteration in original) (quoting Estades-Negroni v. CPC Hosp. San Juan Capestrano, 412 F.3d 1, 4 (1st Cir. 2005) (quoting Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992))).

14

The first "pathway" focuses on "specific factors," including whether the party and state are "independent" on a "day-to-day" basis; if the private party and state share profits; and whether "the private party has used public facilities." Jarvis, 805 F.3d at 8-9. This is referred to as the "joint action" test. Id. Flagg Brothers requires a state to exercise coercion or encouragement to the private entity for the entity to be considered a state actor. 436 U.S. at 166. In this case, the Polo Club acted with its own self-interest, and in fact, did not settle when the Township did, but rather, continued the case.

RMI contends that the Polo Club and Township's joint litigation strategy evidences state action. We disagree. The record indicates the Township had used its own enforcement power, through summonses for zoning code violations. The Township also settled out of the joint case prior to trial, while the Polo Club continued pursuing its cause of action until it was denied. While it may have been convenient or mutually beneficial for the Township and Polo Club to co-litigate the suit, each had independent interests.

Moreover, there is no evidence in the record that the Township and Polo Club are interdependent on a day-to-day basis, nor that they share profits, nor that the Polo Club uses public facilities. Polo Club's suit is based on its interest in private land. The First Circuit in Jarvis held "for purposes of demonstrating the required nexus

15

between state action and private action, we think it insufficient simply to point to a state statute authorizing the actions of the private entity." 805 F.3d at 9 (citing Jackson v. Metro. Edison Co., 419 U.S. 345, 350 (1974); Perkins v. Londonderry Basketball Club, 196 F.3d 13, 20 (1st Cir. 1999)). In this case, the state statute also simply authorizes the Polo Club to bring a suit as an interested party.

"Action taken by private entities with the mere approval or acquiescence of the State is not state action." American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 52 (1999) (citations omitted). The MLUL "merely" approves the Polo Club's suit by including a private cause of action, but does not delegate the duty of enforcement. In Sullivan, an insurer's decisions to "withhold payment for disputed medical treatment" was spurred by "judgments made by private parties," although the procedure was approved by the state. Id. at 51. Sullivan reiterates that "the mere availability of a remedy for wrongful conduct" does not transform a private entity into a state actor, but rather, "[p]rivate use of state-sanctioned private remedies or procedures does not rise to the level of state action." Id. at 53 (quoting Tulsa Prof'l Collection Servs., Inc. v. Pope, 485 U.S. 478, 485 (1988)).

The next route to finding state action would require the Polo Club to undertake a public function. See Terry v. Adams, 345 U.S. 461 (1953) (advancing the "public function" test). As Halleck indicates, the situations where a private entity would be

16

functioning as a state actor typically relate to elections or company towns. See Halleck, 139 S. Ct. at 1929. There, the Supreme Court of the United States found that examples such as "running sports associations and leagues, administering insurance payments, operating nursing homes, providing special education, representing indigent criminal defendants, resolving private disputes, and supplying electricity" did not amount to state action. Ibid. (citations omitted). Here, the question is whether bringing suit to enjoin a neighboring property from having religious gatherings is within the exclusive jurisdiction of the government. And while the cause of action is statutorily authorized, filing a lawsuit is surely not an exclusive government function.

State compulsion is the third avenue for finding that a private entity acted under the color of state law. See Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) (addressing the "state compulsion" test). This test imposes a stiff burden, as when "the state and the private [entity] have unfettered freedom of choice with respect to their participation in this statutory scheme, a finding of state compulsion will not lie." Jarvis, 805 F.3d at 12-13 (citing Adickes, 398 U.S. at 170). For the Polo Club, its actions against RMI have been on its own prerogative. The mere fact that it chose a litigation strategy that consolidated its case with the Township's case does not establish the state required the Polo Club to bring the case, or join cases.

Other cases have found additional tests.  See Jackson, 419 U.S. at 345 ("sufficiently close nexus" test); Burton v. Wilmington Parking Auth., 365 U.S. 715 (1961) ("symbiotic relationship" test).  But the sufficiently close nexus test is primarily used for heavily regulated private entities, which could arguably be treated as the state based on governmental restrictions and guidance.  See Jackson, 419 U.S. at 350-51 (evaluating a state utility monopoly); see also Blum v. Yaretsky, 457 U.S. 991, 1004 (1982) (addressing whether New York nursing homes are regulated enough to be considered the state); Fitzgerald v. Mount Laurel Racing, Inc., 607 F.2d 589, 597 (3d Cir. 1979) (examining the harness racing industry to see if the state had a significant-enough influence on its operation); State v. Schmid, 84 N.J. 535, 544-45 (1980) (explaining how the basis for a "sufficiently close nexus" flows from state regulation).  Here, because the Polo Club is not subject to extensive government regulation, and no facts point toward government regulations causing the dismissed suit, it was not acting under the color of state law based on a regulatory scheme.

In the same light, the "symbiotic relationship test" looks toward profits and cooperation.  See Brown v. Philip Morris, Inc., 250 F.3d 789, 803 (3d Cir. 2001) (quoting Burton, 365 U.S. at 725) (asking whether the government "insinuated itself into a position of interdependence" with the private entity).  RMI's argument under

18

this test would be apparent: the Polo Club and Township created a relationship to achieve a common goal. However, the cases using a symbiotic relationship analysis focus on far more than co-litigation, and ultimately, any relationship was evanescent; the Township settled, while the Polo Club took the case to trial. See Burton, 365 U.S. at 725 (finding that a restaurant in a parking garage on government-owned property amounted to a symbiotic relationship); see also Boyle v. Governor's Veterans Outreach & Assistance Ctr., 925 F.2d 71, 76 (3d Cir. 1991) (explaining how a governor choosing to distribute federal funds does not amount to a symbiotic relationship); Eggert v. Tuckerton Volunteer Fire Co. No. 1, 938 F. Supp. 1230, 1235 (D.N.J. 1996) (first citing Krynicky v. Univ. of Pittsburgh, 742 F.2d 94, 98 (3d Cir. 1984); and then citing Burton, 365 U.S. at 720 (finding that financial support for the private entity and an ongoing relationship between the entity and state led to a symbiotic relationship)).

Rather, here, the issue is "simply one of standing," which we have recently defined as "the legal right to set [the] judicial machinery in motion." Repko v. Our Lady of Lourdes Med. Ctr., 464 N.J. Super. 570, 574 (App. Div. 2020) (alteration in original) (citing Eder Bros. v. Wine Merchs. of Conn., Inc., 880 A.2d 138, 143 (Conn. 2005)); see also N.J. Citizen Action v. Riviera Motel Corp., 296 N.J. Super. 402, 409 (App. Div. 1997) ("Standing refers to the plaintiff's ability or entitlement

19

to maintain an action before the court.").  Similarly, the Polo Club's standing in this action as an interested party, under N.J.S.A. 40:55D-18, does not render it a state actor or government.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5711-18T4