[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-14090

Non-Argument Calendar

_____

ALBERT CLAYTON SIMMONS, II,

Plaintiff-Appellant,

*versus*

AMERICAN INSTITUTE OF CERTIFIED PUBLIC
ACCOUNTANTS,
GEORGIA SOCIETY OF CPA'S,
GEORGIA STATE BOARD OF ACCOUNTANCY,
GREEN, MOSIER & KEMP, LLC,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:24-cv-01789-MHC

_____

Before BRANCH, BRASHER, and KIDD, Circuit Judges.

PER CURIAM:

Albert Simmons, proceeding *pro se*, appeals from the dismissal of his 42 U.S.C. § 1983 suit against the American Institute of Certified Public Accountants ("AICPA"), the Georgia Society of Certified Public Accountants ("GSCPA"), the Georgia State Board of Accountancy ("the State Board"), and Green, Mosier & Kemp, LLC ("GMK"), for various alleged violations relating to Simmons's certified public accountant ("CPA") license. The district court dismissed the claims against the State Board based on sovereign immunity and the claims against the remaining defendants for failure to state a claim upon which relief could be granted. Simmons contends that the district court erred in dismissing his complaint for a number of reasons. After careful review, we affirm.

## I.    Background

In April 2024, Simmons filed a *pro se* § 1983 complaint against the defendants. Liberally construing the complaint,[1] Simmons alleged that he was issued a CPA license in 1975 by the State of

_____

[1] The complaint's allegations are long, unclear, and at times difficult to follow. We have done our best to accurately convey Simmons's allegations.

24-14090                Opinion of the Court                3

Georgia, and had "continually renewed his license until now." Simmons mainly did tax work but he had also "prepared 'compilation' financial statements for some clients."[2] Compilation services "is one of three services" where peer review is required in Georgia.

Simmons alleged that the AICPA and GSCPA are "private business clubs" with no legal authority. However, the State Board "effectively gave law-making authority to the AICPA" by allowing the AICPA to establish "professional standards" and create the peer review program. Simmons took issue with the legality of the AICPA and the AICPA Peer Review Program, accusing the AICPA of creating an unlawful "monopoly" and having no legal authority. He alleged that he was forced to participate in the AICPA peer review program or risk losing his CPA license, which he maintained was "a valuable property interest that [was] protected by the Constitution." The peer review committee allegedly forced him to use certain unspecified language in his engagement letters that amounted to "extortion" of his clients, and "forced a change in the services he can offer and a reduction in future income." He further alleged that he "suffered trauma from the threat to his CPA license and livelihood";[3] "was forced to pay many thousands in fees

_____

[2] Simmons alleged that "[c]ompilation is the current term for financial statements—primarily a balance sheet and income statement—that have not been audited or reviewed by a CPA."

[3] It is unclear from the complaint whether his license was in fact suspended or otherwise revoked. In his prayer for relief, Simmons requests an order directing the State Board to renew his CPA license, which suggests that it may

to the AICPA and reviewing CPA firms for many years"; and spent "considerable time and expense to prepare for and go through the peer reviews." With regard to GSCPA, he alleged only that a manager at GCSPA stated that "[t]he only way to have peer review is through the AICPA" and had "threat[ened] to fail [his] peer review."[4]

As for GMK, Simmons alleged that GMK was "the CPA firm that did the review of [his] compilations and engagement letters," and were "merely agents/deputies/instruments of the AICPA in peer review," and are required to follow the AICPA's "peer review manuals and checklists."

Based on the foregoing, he asserted that the defendants conspired against him to interfere with his rights, and the peer review program violated (1) the non-delegation clause of the Constitution; (2) the Fourth Amendment prohibition on searches and seizures without a warrant; (3) his First Amendment right to freedom of speech, and (4) his right to contract under the Constitution. As relief, he requested that the district court (1) order the State Board to renew his CPA license; (2) order the termination

---

have been suspended or revoked. But then he states in parentheses that "[t]he license may still be in jeopardy," which suggests that no adverse action was taken and that he is still undergoing the peer review process.

[4] Simmons's complaint focused primarily on the AICPA and did not contain any detailed allegations about GSCPA or what role it plays in the peer review process.

of CPA peer review in all states; and (3) compensatory and punitive damages.

The defendants moved to dismiss the complaint on various grounds. The State Board moved to dismiss the claims against it based on sovereign immunity. GMK, AICPA, and GSCPA moved to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(1) and (b)(6), because, among other grounds, (1) they are private entities, not state actors, and they thus could not be liable under § 1983; and (2) Simmons's complaint failed to state a claim upon which relief could be granted.

In response, Simmons argued that the State Board "forfeited its immunity by violating Georgia law and the Georgia Constitution," citing *Ex Parte Young*, 209 U.S. 123 (1908). He then argued that GMK, AICPA, and GSCPA misunderstood the law because there was no state actor requirement under § 1983. And he reiterated the merits of his claims.

Following replies by the defendants, the district court granted the motions to dismiss. The district court concluded that the State Board was entitled to sovereign immunity under the Eleventh Amendment because it was an arm of the State, and the exception in *Ex Parte Young* did not apply. With regard to the AICPA and GSCPA, the district court concluded that they could not be liable under § 1983 because they were private parties and "nothing in Simmons's Complaint suggest[ed] that [they] acted under color of state law." Finally, the district court concluded that

6                    Opinion of the Court                    24-14090

Simmons's conclusory allegations failed to state a claim upon which relief could be granted against GMK.

Simmons filed a motion for reconsideration, followed by a supplemental motion for reconsideration, which the district court denied.  Simmons filed a timely notice of appeal.

## II.    Discussion

Simmons argues that there is no state actor requirement under § 1983, noting that the statute refers to "every person." Alternatively, he maintains that the defendants acted under color of state law.[5]

### A.  Simmons's Claims Against the State Board

The district court dismissed Simmons's claim against the State Board after concluding that the board was entitled to sovereign immunity under the Eleventh Amendment.  On appeal, the State Board argues that Simmons has abandoned any challenge to the district court's sovereign immunity ruling by failing to address it in his initial brief.  Simmons in reply argues that he did not abandon his challenge to the district court's dismissal of the State Board because he mentioned the State Board at various points in his initial brief on appeal.  He maintains that the State Board was not entitled to immunity under the exception in *Ex Parte Young*.

---

[5] Simmons's briefing largely focuses on the merits of his underlying claims and reiterates the allegations in his complaint.  We do not reach these issues and focus solely on the dismissal order.

After careful review, we agree that Simmons has abandoned his challenge to the sovereign immunity ruling.

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003) (quotations omitted). Nevertheless, "[w]hile we read briefs filed by *pro se* litigants liberally, issues not briefed on appeal by a *pro se* litigant are deemed abandoned." *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (citations omitted). "Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived." *N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998); *see also Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

Here, although Simmons is correct that he mentions the State Board in his initial brief, he does so in the context of his factual allegations, his summary of the procedural history of the case, and his discussion of the merits of his claims. He does not, however, make any argument regarding the sovereign immunity dismissal. Nor does he cite any case law related to the sovereign immunity analysis. While Simmons clearly challenges the sovereign immunity holding in his reply brief and cites relevant legal authorities, this is not sufficient to preserve our review. *Sapuppo*,

739 F.3d at 683. "[W]e do not address arguments raised for the first time in a *pro se* litigant's reply brief." *Timson*, 518 F.3d at 874. Accordingly, we conclude that Simmons abandoned any challenge to the sovereign immunity dismissal.

### B. *Simmons's Claims Against the Remaining Defendants*

Simmons argues that the dismissal of his claims against AICPA, GSCPA, and GMK was inappropriate because § 1983 does not require a state actor because the statute refers to "every person."[6] We disagree and conclude that dismissal was proper because Simmons failed to include allegations in his complaint that would plausibly permit an inference of state action by AICPA, GSCPA, or GMK.

To prevent dismissal under Rule 12(b)(6), the plaintiff must allege sufficient facts to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[6] Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 555 (explaining that a complaint must provide sufficient factual allegations that, when taken as true, "raise a right to relief above the speculative level"). "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quotation omitted).

"We review *de novo* the district court's grant of a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Timson*, 518 F.3d at 872.

Simmons's contention that § 1983 does not require state action is based on a misunderstanding of the requirements of § 1983. "In order to prevail on a civil rights action under § 1983, a plaintiff must show that he . . . was deprived of a federal right by a person acting under color of state law."[7] *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). The "under color of state law" requirement in § 1983 means that "§ 1983 only provides for claims to redress State action." *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001); *see also Am. Mfrs. Mut. Ins. Co. v. Sullivan*,

---

[7] Simmons also takes issue with the fact that the district court never addressed his alleged deprivation of rights for purposes of § 1983, which he contends "is the most important part of 42 U.S.C. [§] 1983." The district court did not err in failing to address this element. It was not necessary for the district court to address whether Simmons had shown a deprivation of a federal right if he could not satisfy the state action element.

526 U.S. 40, 50 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." (quotations omitted)). "Should [the district court] conclude that there is no State action, [it] must dismiss the [plaintiff's] claim . . . . " *Rayborn*, 241 F.3d at 1347.

"For a defendant's actions to be fairly attributable to the state, first, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible." *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992) (alteration adopted) (quotation omitted). "Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id.* (quotations omitted).

Private actors may be deemed to have acted under color of state law, but "[o]nly in rare circumstances." *Id.* We employ three distinct tests for determining whether a private party acted under color of state law: (1) the public function test, "where private actors are performing functions traditionally the exclusive prerogative of the state"; (2) the state compulsion test, which applies to situations "where the government has coerced or at least significantly encouraged the action alleged to violate the Constitution"; and (3) the nexus/joint action test, "where the state has so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1277 (11th Cir. 2003) (quotations omitted).

Simmons failed to allege facts in his complaint that plausibly demonstrated that AICA, GSCPA, or GMK were state actors.[8] Simmons conceded in his complaint that the AICPA, GSCPA, and GMK were all private entities.  However, he failed to allege plausible facts that tended to show state action by those private entities.  With regard to AICPA, he alleged that it lacked legal authority and was an unlawful monopoly because it was the "only accepted administering entity for peer review."  He asserted that the State Board "effectively gave law-making authority to the ACIPA when it said that CPA's must follow 'professional standards' established by the AICPA."  He also alleged that "the State Board does not actually oversee the work of the AICPA or GSCPA."  At most, these allegations suggest that the State approved or acquiesced in AICPA's actions, which is insufficient to plausibly show state action on the part of AICPA.  *See Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 52 ("Action taken by private entities with the mere approval or acquiescence of the State is not state action.").  Thus, Simmons failed to provide sufficient factual allegations with regard to AICPA in his complaint that, when taken as true, "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

With regard to GSCPA, he alleged only that a manager at GCSPA stated that "[t]he only way to have peer review is through

_____

[8] Although the district court did not expressly hold that GMK was not a state actor, we may affirm on any basis supported by the record. *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1305 n.7 (11th Cir. 2020) ("We can affirm on any basis supported by the record, regardless of whether the district court decided the case on that basis." (quotations omitted)).

the AICPA" and had "threat[ened] to fail [his] peer review." As for GMK, he alleged only that it was the "CPA firm that did the review of [his] compilations and engagement letters," and that GMK was merely an agent of AICPA. These conclusory allegations do not permit an inference that GSCPA or GMK were acting under color of state law.[9] *Twombly*, 550 U.S. at 555.

And although he alleged generally that the AICPA, GSCPA, and GMK conspired with the State Board to interfere with his rights by threatening loss of his CPA license, his conclusory allegations were insufficient to transform the private entities into state actors. *See Harvey*, 949 F.2d at 1133 ("For purposes of 42 U.S.C. § 1983, the plaintiff must plead in detail, through reference to material facts, the relationship or nature of the conspiracy between the state actor(s) and the private persons.").

Accordingly, because Simmons failed to allege factual allegations that plausibly established state action on the part of AICPA, GSCPA, or GMK, the district court was required to dismiss his § 1983 complaint.[10] *Rayborn*, 241 F.3d at 1347 ("Should [the

[9] Although Simmons alleges in his brief on appeal that the defendants acted under color of state law because CPA peer review "is an act of law enforcement" that "is traditionally the responsibility of the state" and that the defendants acted in concert with the state, he failed to make these allegations in his complaint. Thus, these belated allegations do not aid him in showing that his complaint plausibly stated a claim for relief.

[10] Simmons also argues that the district court's dismissal of his complaint "was biased, faulty, and fraudulent" because the district court made false statements from cases, cited cases not relied upon by the parties (which he contends is a felony), and made statements that demonstrated the court was biased against

district court] conclude that there is no State action, [it] must dismiss the [plaintiff's] claim . . . . ").

Finally, we note that the district court did not specify whether its dismissal was with or without prejudice. We presume it was without prejudice for two reasons. First, a dismissal on jurisdictional grounds, such as sovereign immunity, is "not [a] judgment[] on the merits and [is] to be entered without prejudice." *Dupree v. Owens*, 92 F.4th 999, 1007 (11th Cir.), *cert. denied*, 145 S. Ct. 225 (2024). Second, where a more carefully drafted complaint might state a claim, the district court abuses its discretion if it does not provide a *pro se* plaintiff at least one opportunity to amend before the court dismisses with prejudice. *See Woldeab v. DeKalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291–92 (11th Cir. 2018); *see also Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991) (same), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 543 & n.1 (11th Cir. 2002) (en banc). This rule applies even when the plaintiff does not seek leave to amend the complaint in the district court or seeks leave to amend after the court renders judgment.

---

Simmons. We disagree. We have reviewed the district court's opinion and there is no indication that the court was biased against Simmons or made false statements. We note that the district court is not limited to the legal authorities proffered by the parties. Further, any bracketed information used by the district court as part of quoting material from legal authorities is part of formal legal citation style and, contrary to Simmons's contentions, does not render the quoted materially false.

14               Opinion of the Court               24-14090

*Bank*, 92 F.2d at 1112.  Accordingly, nothing precludes Simmons from filing a new complaint if he desires to do so.

**AFFIRMED.**