[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-12571

_____

JENNIFER DUPREE,

Plaintiff-Appellant,

*versus*

MRS. PAMELA OWENS,
DEPARTMENT OF HUMAN SERVICES,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

D.C. Docket No. 1:20-cv-04915-MLB

_____

_____

No. 21-13198

_____

DETRICH BATTLE,

Plaintiff-Appellant,

*versus*

GEORGIA DEPARTMENT OF CORRECTIONS,

Defendant-Appellee,

HANCOCK STATE PRISON et al.,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 5:20-cv-00063-MTT

_____

Before WILSON, JILL PRYOR, and BRASHER, Circuit Judges.

WILSON, Circuit Judge:

Jennifer Dupree and Detrich Battle appeal orders from the Northern and Middle Districts of Georgia, respectively, challenging: (1) the dismissal of their Title V claims under the Americans with Disabilities Act (ADA) on the basis of sovereign immunity; and, if sovereign immunity correctly applies, (2) the dismissal of their ADA claims with prejudice. Dupree and Battle argue that Congress acted pursuant to valid constitutional authority in abrogating sovereign immunity for Title V ADA claims. They argue alternatively that, if sovereign immunity applies, the dismissal of their ADA claims should be without prejudice, as sovereign immunity is inherently a dismissal based on jurisdictional grounds.

After reviewing the record, and with the benefit of oral argument, we find that sovereign immunity applies to Title V claims when brought in conjunction with Title I claims. For clarity, we vacate and remand for the district court to indicate that the dismissals are without prejudice.

## I.          Background

As this is a consolidated case, we will separately discuss the factual and procedural background for both Dupree and Battle below.

### A.  Dupree Factual Background

On March 1, 2018, the Georgia Department of Human Services (DHS) hired Dupree to an administrative role. Shortly

thereafter, Dupree sought an accommodation under the ADA on account of her chronic conditions of bipolar disorder, post-traumatic stress disorder, and depression. Specifically, Dupree requested that DHS accommodate her by adjusting her work schedule to permit her to attend medical appointments by working alternate times. DHS contacted one of Dupree's doctors to confirm her need for an accommodation. The doctor responded by recommending Dupree be placed on leave under the Family and Medical Leave Act. DHS called the doctor, confirmed the doctor found Dupree was "not suitable for work," and subsequently terminated her employment.

## B. Battle Factual Background

Battle was previously employed by the Georgia Department of Corrections (GDC), stationed at Hancock State Prison (Hancock). Battle alleges that on December 1, 2014, he was summoned at work to a "harassment meeting on the issue of them taking my money" due to an earlier work-related incident. He alleges he experienced chest pain during the meeting and requested an ambulance or his wife for care, but his superiors refused to make any calls. Battle requested medical leave for December 15–17, 2014, but was denied. Later, on April 15, 2015, Battle claims he fell and injured himself at work. He alleges he was entitled to worker's compensation, but his supervisors mishandled the related paperwork and threatened to fire him. On April 20, 2015, Battle returned to work with doctor-prescribed permanent restrictions. On July 13, 2015, Battle attended a morning briefing but did not receive an

assignment and was sent home. He called "personnel" who stated he had too many restrictions to work. Battle alleges he was "continually harassed," received disparate treatment, and his superiors worsened his medical condition "by unfair practices and treatment" by making him perform manual labor post-injury. While unclear in the record, it appears Battle was placed on leave without pay from July 29, 2015, to April 20, 2018, when he was terminated. In Battle's Equal Employment Opportunity Commission (EEOC) charge, he says his employer's stated reasoning for terminating him was that Battle did not provide updated medical documentation. Battle disputes this, alleging his doctor sent along appropriate documentation and the documentation submission deadline was April 24, 2018—four days after his official termination.

## II.          Procedural History

Again, we address the procedural histories of Dupree and Battle in turn.

### A. Dupree Procedural History

In December of 2020, Dupree filed a pro se complaint in the Northern District of Georgia against DHS, alleging three claims: (1) DHS discriminated against her in violation of Title I of the ADA by failing to provide her with a reasonable accommodation; (2) DHS retaliated against her in violation of Title V of the ADA because of her opposition to a practice of her employer that she believed violated federal anti-discrimination laws; and (3) DHS committed the state law violations of "unfair termination/tort." DHS moved to dismiss the complaint, asserting sovereign

immunity under the Eleventh Amendment and arguing that "unfair or wrongful termination" was not an actional claim under Georgia law. Dupree did not file a response to DHS' motion. The magistrate judge issued a report and recommendation (R&R), finding that the ADA claims should be dismissed with prejudice based on sovereign immunity. Further, the R&R stated the district court should decline supplemental jurisdiction and dismiss the state claims without prejudice. Dupree did not explicitly object to the R&R but instead filed a docket entry "NOTICE of Filing Amended Complaint/objections by Jennifer Dupree re 4 Complaint, 20 FINAL REPORT AND RECOMMENDATION." This docket entry did not respond or object to any of the findings in the R&R. The district court reviewed the R&R for plain error since it found Dupree failed to object and adopted the R&R in its entirety. Dupree timely appealed.

## B.  *Battle Procedural History*

On March 20, 2020, Battle filed a recast pro se complaint in the Middle District of Georgia against Hancock and ten individual state employees. Battle alleged state law claims and ADA violations for discriminatory discharge, failure to accommodate, and retaliation against Hancock and the individual state employees in their official and individual capacities. The district court dismissed as frivolous the claims against the state employees in their individual capacities but allowed the claims against their official capacities to proceed.

Hancock filed a motion to dismiss the complaint, stating: (1) the ADA claims were time barred; (2) sovereign immunity applied; and (3) since sovereign immunity applied, the state claims must be dismissed for lack of subject matter jurisdiction. The district court determined that: the GDC should be substituted for Hancock; the state law claims should be dismissed for failure to state a claim; the Title I ADA claims were barred under the Eleventh Amendment; and the official-capacity claims against the ten state employees were "redundant," requiring dismissal. In response to a later motion by the GDC for judgment on the pleadings, the district court found that the ADA retaliation claim was also barred by the Eleventh Amendment. The court entered final judgment in favor of the GDC. Battle timely appealed.

On appeal, the Georgia Attorney General (Attorney General)[1] filed an unopposed motion to consolidate, which we granted. We consider both cases together below.

### III.     Analysis

Dupree and Battle claim: (1) they are entitled to plain error and de novo review, respectively; (2) the dismissal of their Title V claims under the ADA on the basis of sovereign immunity was improper; and, alternatively, (3) if sovereign immunity correctly

---

[1] We reference the Attorney General here, and throughout the remainder of the opinion, instead of the GDC or DHS because the Attorney General is defending both parties in this consolidated case.

applies, their ADA and adjoining state disability claims should not have been dismissed with prejudice. We address each claim in turn.

## A.  Standard of Review

When an appellant fails to timely respond to a magistrate judge's R&R, we, at most, review the appeal "for plain error if necessary in the interests of justice." 11th Cir. R. 3-1; *see also Harrigan v. Metro Dade Police Dep't Station #4*, 977 F.3d 1185, 1191 (11th Cir. 2020). And when the plaintiff fails to respond to the defendant's arguments, any future claims by the plaintiff as to that issue will not be preserved on appeal. *See Gennusa v. Canova*, 748 F.3d 1103, 1116 (11th Cir. 2014). We might *at most* review for plain error. *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1352 (11th Cir. 2017).

Yet subject matter jurisdiction issues present questions of law that we review de novo, "even when it is raised for the first time on appeal." *United States v. Iguaran*, 821 F.3d 1335, 1336 (11th Cir. 2016) (per curiam); *McCoy v. United States*, 266 F.3d 1245, 1249 (11th Cir. 2001) (holding that "jurisdictional errors are not subject to plain- or harmless-error analysis"). In *Edelman v. Jordan*, the Supreme Court held that "the Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar," in that it does not need to be raised at the trial court to be considered. 415 U.S. 651, 677–78 (1974), *overruled on other grounds in Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613 (2002). The Supreme Court has also held that "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived" and courts "have an independent obligation to determine whether

subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (cleaned up).

Dupree and Battle argue for differing standards of review, and both are before us in different postures. Dupree failed to timely respond to the magistrate judge's R&R, meaning we typically review her appeal "for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. Dupree argues that the interest of justice exception should apply, as she was suffering from bipolar disorder, post-traumatic stress disorder, and depression while also litigating pro se. Therefore, she asserts we should review her claim for plain error instead of letting her claim be waived entirely. Battle summarily states his claims should be reviewed de novo as all issues presented in his brief are "pure questions of law."

The Attorney General contends that Dupree waived her appeal by not objecting to the magistrate's report and that even if she could show the "interests of justice" exception to waiver applies, only plain error review is warranted. The Attorney General concedes the standard of review should be de novo for Battle's claim, as it involves a district court's order granting a sovereign immunity defense.

Procedural postures aside, we assume without deciding that de novo is the appropriate standard of review for Battle's claim. His claims involve issues of sovereign immunity and, in both cases, the district court dismissed the case on sovereign immunity grounds. Sovereign immunity is inherently jurisdictional in nature, despite

our circuit's findings to the contrary in two prior unpublished cases.[2] And under *Iguaran*, we review de novo the district court's subject matter jurisdiction, as it presents a question of law. 821 F.3d at 1336. Because Battle loses under de novo review, as explained below, Dupree loses no matter the standard of review.

### B.  Sovereign Immunity and Title V of the ADA

The Eleventh Amendment renders States immune from certain suits in federal court. U.S. Const. amend. XI. While the text of the Eleventh Amendment "applies only to suits against a State by citizens of another State," the Supreme Court has construed the Eleventh Amendment to apply to suits initiated by citizens against their own States. *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001).

In limited circumstances, Congress may abrogate the States' Eleventh Amendment immunity to enforce individual rights enshrined in the Fourteenth Amendment. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 455–56 (1976). To overcome State sovereign immunity, Congress must (1) "unequivocally" declare its intent to abrogate sovereign immunity and (2) "act[] pursuant to a valid grant of constitutional authority." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000).

---

[2] *See Thomas v. Clayton Cnty. Bd. of Comm'rs*, No. 22-10762, 2023 WL 1487766, at *3 n.2 (11th Cir. Feb. 3, 2023) (per curiam); *Bailey v. Bd. of Regents of Univ. Sys. of Ga.*, No. 21-11225, 2022 WL 4517092, at *5 (11th Cir. Sept. 28, 2022) (per curiam).

Congress has constitutional authority to abrogate sovereign immunity under Section 5 of the Fourteenth Amendment. *United States v. Georgia*, 546 U.S. 151, 158 (2006). Under Section 5, Congress may (1) create a private right of action against the State for actual constitutional violations or (2) respond to "a pattern of discrimination by the States" by passing legislation to remedy and deter Fourteenth Amendment violations. *Garrett*, 531 U.S. at 365, 374; *see Georgia*, 546 U.S. at 158. When Congress abrogates state sovereign immunity in response to a pattern of state discrimination, it has the prophylactic authority to subject States to suit for some conduct that does not itself violate the constitution. *Kimel*, 528 U.S. at 81.

This privilege is cabined, however, by a necessity of balancing "congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *City of Boerne v. Flores*, 521 U.S. 507, 520 (1997), *superseded by statute on other grounds*, 42 U.S.C. § 2000bb *et seq.*, *as recognized in Ramirez v. Collier*, 595 U.S. 411, 424 (2022). To determine whether Congress' response is congruent and proportional, courts employ a three-step inquiry: (1) identify which right Congress "sought to enforce when it enacted the ADA"; (2) examine whether a demonstrated record of unconstitutional discrimination existed to support Congress' decision that preventative legislation was warranted; and (3) determine whether the ADA provision at issue is an appropriate response to the history of mistreatment. *Nat'l Ass'n of the Deaf v. Florida*, 980 F.3d 763, 771 (11th Cir. 2020) (quoting *Ass'n for Disabled Ams., Inc. v. Fla. Int'l Univ.*, 405 F.3d 954, 957 (11th Cir. 2005)).

Notably, there is not controlling case law from our circuit or the Supreme Court addressing whether the Eleventh Amendment specifically bars Title V ADA claims against State entities when brought with Title I claims.[3]

Dupree and Battle argue that Congress acted pursuant to a valid grant of constitutional authority in enacting Title V, thus allowing their claims to overcome sovereign immunity. Dupree and Battle contend that Congress wanted to enforce due process and First Amendment rights under Title V and rely heavily on the Supreme Court's reasoning in *Tennessee v. Lane*, 541 U.S. 509, 522–23 (2004). They claim that Congress found "hundreds of examples of unequal treatment" recognized in *Lane*, which should serve as the pattern of state discrimination needed here. *Id.* at 526. Also, they briefly state that Title V is a congruent and proportional response to discrimination because, if people were afraid to assert their rights under other ADA provisions for fear of retaliation, the other provisions would accomplish little. Overall, Dupree and Battle urge us that sovereign immunity should not apply, thereby allowing their ADA claims and state claims to proceed.

---

[3] The Ninth Circuit addressed this argument in *Demshki v. Monteith*, 255 F.3d 986, 988–89 (9th Cir. 2001), finding that sovereign immunity attaches to Title V ADA claims when the Title V claim is based on an underlying Title I violation. Similarly, the Fifth Circuit has recognized that "a plaintiff may bring a retaliation claim against a state entity only to the extent that the underlying claim of discrimination abrogates [state] sovereign immunity." *Block v. Tex. Bd. of Law Examiners*, 952 F.3d 613, 619 (5th Cir. 2020) (internal quotation marks omitted).

21-12571                Opinion of the Court                13

The Attorney General argues that Congress did not act pursuant to a valid grant of constitutional authority, leaving sovereign immunity intact. Specifically, the Attorney General argues that the findings referenced in *Lane* are inapposite because the pattern of discrimination involved equal access to the judicial system through courthouses—not state discrimination against public employees. Therefore, the Attorney General claims, the dearth of facts demonstrating the necessary pattern of discrimination needed for a Title V case bars the claim.

Dupree and Battle's Title V claims are unpersuasive. Their arguments depend on us extending the reasoning in *Lane* to the case at hand, but the comparison of the two cases is inapt. First, *Lane* involved a Title II claim, not Title I or V claims, which are present here. Second, even assuming that due process and First Amendment rights are the properly identified rights at issue, Dupree and Battle improperly rely on *Lane* in their attempt to show documented patterns of state discrimination, when the patterns addressed in *Lane* do not relate to employment discrimination. They quote passages that state Congress "uncovered . . . evidence . . . in the form of hundreds of examples of unequal treatment of persons with disabilities by States and their political subdivisions." *Lane*, 541 U.S. at 526. But, as Dupree and Battle admit, the "overwhelming majority" of these findings concerned discrimination in the administration of public programs and services. *Id.* This provides the pattern of discrimination for Title II claims, not Title I or V, which concern employment discrimination and retaliation, respectively.

Thus, Dupree and Battle fail to offer any evidence of a pattern of retaliation or disability discrimination by the State.

Further, without the patterns mentioned above, Title V cannot serve as a congruent and proportional remedy when paired with a Title I claim. A retaliation claim under Title V is predicated on an individual suffering a harm post-asserting rights under a separate ADA provision. Here, the separate ADA provision would be Title I, addressing employment discrimination. But the Supreme Court concluded that sovereign immunity was not abrogated under Title I. *Garrett*, 531 U.S. at 374. *Garrett* demonstrated that Title I was not a valid exercise of Congress' Section 5 power because of the lack of evidence regarding a pattern of unconstitutional employment discrimination by the States. *Id.* Therefore, when the underlying provision—here, Title I—does not allow a plaintiff to assert a claim against the State, it logically follows that a Title V claim that is based on the exercise of a right arising only from Title I cannot be levied against the State. For these reasons, the claim that sovereign immunity was properly abrogated fails. We need not decide whether sovereign immunity attaches to a standalone Title V claim or one where the alleged underlying violation occurs under another title. We leave that discussion for another day.

### C. Titles I & V Claim Dismissals

Again, "[s]overeign immunity is jurisdictional in nature." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). Dismissals for a lack of jurisdiction are not judgments on the merits and are to be entered without prejudice. *Stalley ex rel. United States v. Orlando Reg'l*

*Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (per curiam); *see also* Fed. R. Civ. P. 41(b). An unlabeled dismissal is presumed to be without prejudice under Rule 41(b) if it is for lack of jurisdiction.

Dupree and Battle argue that, because the district courts did not specify whether the dismissals were without prejudice, the orders were effectively entered as dismissals with prejudice. They acknowledge that sovereign immunity applies to their Title I claims and ask us to amend the orders below to clarify that the dismissals of their claims are without prejudice.

The Attorney General concedes that a dismissal premised on a jurisdictional issue should be without prejudice. However, the Attorney General maintains that the court's silence does not qualify as error, and the plaintiffs are simply mistaken about the dismissal being with prejudice.

Because the dismissals were based on sovereign immunity grounds, the jurisdictional nature of the dismissal requires it to be entered without prejudice. Under the Federal Rules of Civil Procedure, a dismissal for lack of jurisdiction operates as a dismissal without prejudice if the order does not indicate otherwise. Fed. R. Civ. P. 41(b). However, even if a dismissal is presumptively without prejudice, it is a best practice for district courts to err on the side of clarity and indicate whether prejudice has attached. We therefore vacate and remand for the limited purpose of allowing the district court to dismiss the case without prejudice. We affirm the district court in all other respects.

16                          Opinion of the Court                          21-12571

**VACATED** and **REMANDED**.